Ogden *against* Gibbons.

The several acts of the Legislature of this state, granting and securing to *R. R. Livingston* and *R. Fulton*, the sole and exclusive right of using and navigating boats or vessels, by steam or fire, in the waters of this state, for a certain number of years, are constitutional and valid acts.

And this Court will grant an injunction to restrain the citizens of another state from navigating the waters of this state by vessels propelled by steam, without the consent of the said *R. R. L.* and *R. F.*, or their assigns, although such vessels may have been enrolled and licensed under the laws of the *United States*, as coasting vessels.

*Sept. 27th,* *AARON OGDEN* filed his bill, on the 21st of *October,*
*and Oct. 6th.* 1818, against *Thomas Gibbons,* stating, that on the 19th of *March,* 1817, the Legislature granted to *John Fitch,* the exclusive right of using, for a limited time, a steam boat, &c. That on the 2ᵗʰth of *March,* 1788, the Legislature repealed the act so made in favour of *Fitch* and passed an act granting a similar right to *Robert R. Livingston,* for twenty years; and on the 5th of *April,* 1803, granted the like right to *Robert R. Livingston,* and *Robert Fulton,* for twenty years. That on the 6th of *April,* 1807, the Legislature passed another act in favour of *L.* and *F.*, extending the time for giving the proof required by the former act. That on the 11th of *April,* 1808, *L.* and *F.* having given the requisite proof of their having built a boat impelled by steam, at the rate of more than four miles an hour, &c. the Legislature passed another act, giving to *L.* and *F.*, and their associates, an extension of five years of the exclusive right to navigate the waters of this state, by boats or vessels moved by steam, for every additional boat which they might build, so that the whole term should not exceed thirty years from the time of passing that act; and declaring, that no

+ *1787*

person or persons, without their licenses, should set in motion, or navigate, upon the waters of this state, or within the jurisdiction thereof, any boat or vessel moved by steam or fire, under the penalty of forfeiting to the said *L.* and *F.*, and their associates, such boat or vessel, &c. That' by another act, passed the 9th of *April,* 1811, it was declared, among other things, that the several forfeitures mentioned in the act of the 11th of *April,* 1808, should be deemed to accrue on the day on which any boat moved by steam or fire, not navigating under the license to *L.* and *F.*, or their associates, shall navigate any of the waters of this state, or those within its jurisdiction, in contravention of the said act, and that *L.* and *F.*, and their associates, might thereupon have the same remedy, in law and equity, to recover such boats, &c. as if the same had been wrongfully taken out of their possession, &c. The bill further stated, that the said *L.* and *F.* having, in all things, complied with, and fulfilled the terms and conditions expressed in the said laws, became entitled to the exclusive right and privilege to navigate the waters of this state, by boats moved by steam or fire. That on the 20th of *August,* 1808, *R. R. L.* and *F.*, by indenture, granted to *John R. Livingston,* and his assigns, " all the right which the said *R. R. L.* and *F.* possessed under the laws of the state, exclusively to navigate from any place within the city of *New-York,* lying to the south of the state prison, to certain places in the said indenture specified, and lying to the south of *Powles Hook ferry,* and particularly to *Staten Island, Elizabethtown Point, Perth and South Amboy,* and the *river Rariton up to New-Brunswick,* &c. That on the 5th of *May,* 1815, *J. R. L.*, by articles of agreement, agreed to permit the plaintiff to run a steam boat, or steam boats, between *Elizabethtown Point* and the city of *New York,* for ten years, from the 1st of *March,* 1815, in as full and ample a manner as he, the said *J. R. L.*, had then a right to run the same, by virtue of the grant to him from *R. R. L.* and *R. F.* ; and that the said *J. R. L.*

further agreed with the plaintiff, that he would not run, nor grant any license to run a boat, or boats, during the ten years, to and from *Elizabethtown*, and *Elizabethtown Point*. That *R. R. L.* died in *February*, 1813, and *R. F.*, in *March*, 1815, and that the legal representatives of *R. R. L.* and *R. F.*, on the 29th of *December*, 1815, covenanted with the plaintiff and *Thomas Morris*, among other things, to release and confirm to the present owners, or their assigns, of any steam boat, or boats, run by them, or any of them, on the *Hudson* river, on the sound between *New-York Island* and *Long Island*, or between *New-York* and *Elizabethtown Point*, or *Elizabethtown*, to the whole extent of the township, all their right, title, or titles respectively, to every patent, or other right holden by them, &c. That when this last mentioned deed was executed, the plaintiff was owner of a steam boat then running on the waters of the state, between *New-York* and *Elizabethtown Point*, or *Elizabethtown* ; and the plaintiff claimed the exclusive right of navigating the waters of the state of *New-York*, by boats moved by steam or fire, between *New-York* and *Elizabethtown*, in virtue of the two deeds last mentioned. That the plaintiff has lately built, and runs a steam boat called the *Atalanta*, by virtue of his said exclusive right, between *Elizabethtown Point* and the city of *New-York*. That the defendant, *T. Gibbons*, of *Elizabethtown*, in the state of *New-Jersey*, is owner of two boats impelled by steam, one called the *Stoudinger*, and the other the *Bellona* ; and in contravention of the exclusive right and privilege of the plaintiff, and without any license from the plaintiff, or *R. R. L.* and *R. L.*, or their representatives, the defendant had set in motion the said two boats moved by steam or fire, and employed them in the trasportation of passengers between the city of *New-York* and *Elizabethtown*, and that those boats now actually navigate between *New-York* and *Elizabethtown*, &c. to the great loss and prejudice of the plaintiff. *Prayer* for an *injunction* to restrain the defendant,

his agents, &c. from using, employing, and navigating the said two steam boats, or either of them, or any other steam boat by him purchased or built, as aforesaid, on the waters of this state lying between *Elizabethtown*, or any place within the bounds of the township, and the city of *New-York*, &c. A writ of injunction was granted on the 21st of *October*, 1818, according to the prayer of the bill.

On the 19th of *August*, 1819, the defendant filed his answer to the bill, in which he admitted the several acts of the Legislature, and the deeds, &c. set forth in the plaintiff's bill, but denied the exclusive right claimed by the plaintiff under them. He admitted, that he was the owner of the two steam boats described in the bill, and which were intended to navigate by steam between the city of *New-York*, and the wharf of the defendant in *New-Jersey*, at a place usually called *Halsted's Point*, which is within the bounds of the townships of *Elizabethtown*, but separated from *Elizabethtown Point*, by a large and navigable creek ; that the said boats did run between *New-York* and the said wharf of the defendant, which is a short distance from *Elizabethtown Point*, the place from which the plaintiff's boat runs to *New-York ;* and that the said boats of the defendant continued so to run, &c. until restrained by the injunction issued in this cause. But he denied, that the said boats ever run from *Elizabethtown Point.* The defendant averred, that his two boats are vessels above the burthen of twenty tons, and were duly enrolled and licensed under the laws of the *United States*, to be employed in carrying on the coasting trade, according to the laws of the *United States.* That the *Stoudinger* was enrolled at *Perth Amboy*, in *New-Jersey*, on the 23d of *October*, 1817, and licensed for one year, which license was renewed on the 20th of *October*, 1818, for one year, by the collector of the port of *Perth Amboy*, in the form prescribed by law, in pursuance of an act of Congress, entitled, " an act for enrolling and licensing ships and vessels to be employed in the coasting trade and fishe-

ries, and for regulating the same." And the defendant insisted, that the *Stoudinger*, under this license, may be lawfully employed and navigated in the coasting trade-between parts of the same state, or of different states, and cannot be excluded or restricted therein, by any law or grant of any particular state, on any pretence to an exclusive right to navigate the waters of any particular state by steam boats, &c. That the steam boat *Bellona* was in like manner enrolled and licensed on the 20th of *October*, 1818, &c. That the representatives of *R. R. L.* and *F.*, claiming to be entitled to certain patent rights for improvements in steam navigation, and, also, an exclusive right to navigate the waters of the state of *New-York*, with boats or vessels propelled by steam or fire, on the 14th of *September*, 1816, by deed, sold to *D. D. Tompkins, Adam Brown,* and *Noah Brown,* and their assigns, " the right, liberty, and privilege of navigating, for all purposes whatsoever, boats or vessels of all kinds whatsoever propelled by the force of fire or steam, upon, over, and across the waters of the bay of *New-York, Staten Island* sound, the outward harbour, including *Prince's* and *Gravesend* bays, and a part of the *Atlantic* ocean, and *Jamaica* bay ; and, also, a right, privilege, and liberty, with all such boats so propelled, to touch, stop, and land passengers, and discharge cargoes, to depart from, and arrive at the city of *New-York*, or any part thereof; and, also, the sole and exclusive right, privilege, and liberty of navigating, with all such boats to and from the city of *New-York*, and to and from the points and places in the said deed particularly mentioned and specified, to wit : " *Shrewsbury* bay and rivers in *New-Jersey, Sandy Hook, Spermaceti Cove,* and the waters and shores adjacent thereto, to the southward of *Sandy Hook, Fort Diamond,* and the shores of *Long Island,* with liberty to touch at any point or place on the easterly and southerly side of *Staten Island,* and any point on the said shores, at which the grantors may lawfully touch, consistenly with their grants to others." That *Adam*

1819.

OGDEN
v.
GIBBONS.

*Brown* afterwards died, and his executors, on the 4th of December, 1808, by a deed, reciting, that all the rights and privileges under the last mentioned deed, had been released to *D. D. Tompkins,* and as respected *Shrewsbury,* and all the shores of *Shrewsbury* bay and rivers, to *Noah Brown ;* and they, the said executors of *A. B.,* sold to the defendant and his assigns, all the rest, residue, and remainder of the right of *A. B.,* derived under the said deed of the 14th of *September,* 1816. That *D. D. Tompkins* and *Noah Brown,* on the 7th of *December,* 1818, by deed, sold and conveyed to the defendant, a right of navigating with steam boats, upon, over, and across the waters of *the bay of New-York, Staten Island sound, the outward harbour, the Atlantic ocean,* and all the waters specified in the deed of the representatives of *R. R. L.* and *F.* to them, and to touch and land passengers, and take or discharge cargoes, and to depart from, and arrive at, and navigate to, from, and between the city of *New-York,* or any part thereof, and to, from, and between any place or places, point or points whatsoever, in the state of *New-York,* or in the state of *New-Jersey,* or elsewhere, other than, and *except Staten Island, and all the points and places on the shores of the state of New-Jersey, between the point of Sandy Hook and the east end of the division line between Monmouth and Middlesex counties, in the state of New-Jersey.*" And the defendant insisted, that if *R. R. L.* and *F.,* or either of them, had any exclusive right to navigate by steam boats, (which, however, the defendant did not admit,) he, the defendant, had a right, under the deeds above mentioned, to navigate the waters of the state of *New-York,* between the city of *New-York* and *Elizabethtown,* or *Elizabethtown Point,* or any place or point in the creek called *Elizabethtown* creek, in the township of *Elizabethtown,* in the state of *New-Jersey,* with boats or vessels moved by steam or fire. And the defendant denied the right of the plaintiff, if the matters set forth in his bill were true, to prosecute alone, as by his own showing, he was as-

signee of a *part* only of the exclusive right claimed by him ; and he prayed that he might have the benefit of this defence, equally as if he had demurred to the bill, or pleaded it.

*Sept. 27th.*

On the coming in of the answer, a motion was, this day, made to dissolve the injunction, which was argued by *Henry*, for the defendant ; and by the plaintiff himself, and *Van Vechten.*

*Oct. 6th.*

The cause stood for consideration until this day.

THE CHANCELLOR. The motion to dissolve the injunction is founded upon the matter contained in the answer.

The defendant sets up two grounds of right to navigate with steam boats between the city of *New-York* and *Halsted's Point*, within the township of *Elizabethtown*, in *New-Jersey* : (1) A license to carry on the coasting trade, granted under the laws of the *United States*, and (2) a license under the representatives of *Livingston* and *Fulton.*

1. The act of Congress (passed 18th of *February*, 1793, ch. 8.) referred to in the answer, provides for the *enrolling and licensing ships and vessels to be employed in the coasting trade and fisheries.* Without being enrolled and licensed, they are not entitled to the privileges of *American* vessels, but must pay the same fees and tonnage as foreign vessels, and if they have on board articles of foreign growth or manufacture, or distilled spirits, they are liable to forfeiture. I do not perceive that this act confers any right incompatible with an exclusive right in *Livingston* and *Fulton*, to navigate steam boats upon the waters of this state ; the right of the Legislature to pass the laws mentioned in the pleadings is not attempted to be made a question of in this place, and upon this occasion. That right has been settled (as far as the Courts of this state can settle it) by the decision of the Court of Errors, in *Livingston* v. *Van Ingen; (9 Johnson, 507.)*

and if those laws are to be deemed, in the first instance, and
*per se*, valid and constitutional, and as conferring valid legal
rights, a coasting license cannot surely have any effect in
controlling their operation.   The act of Congress referred
to,  never meant to determine the right of property, or the
use or enjoyment of it, under the laws of the states.   Any
person, in the assumed character of owner, may obtain the
enrolment and license required ;  but it will  still remain for
the laws and courts of the several states to  determine the
right and title of such assumed owner, or of some other
person, to navigate the vessel.   The license only gives to
the vessel an *American* character, while the right of the
individual procuring the license to use the vessel, as against
another individual setting up a distinct and exclusive right,
remains precisely as it did before.   It is neither enlarged
nor diminished by means of the license ;  the act of the col-
lector does not decide the right of property.   He has no
jurisdiction over such a question.   Nor do I think it would
alter the case, in respect to the force and effect of the laws
before us, if the license of the collector was evidence of
property.   However unquestionable the right and title to a
specific chattel may be, *and from whatever source that title
may be derived*, the use and employment of it must, as a
general rule, be subject to the laws and regulations of the
state.   If an individual be, for instance, in possession of any
duly patented vehicle, or machine, or vessel, or medicine,
or book, must not such property be held, used, and enjoyed,
subject to the general laws of the land, such as laws estab-
lishing turnpike roads and toll bridges, or the exclusive
right to a ferry, or laws for preventing and removing nui-
sances?   Must it not be subject to all other regulations
touching the use and employment of property, which the
Legislature of the state may deem just and expedient?   It
appears to me that these questions must be answered in the
affirmative.   The only limitation upon such a general dis-
cretion and power of control, is the occurrence of the case

when the exercise of it would impede or defeat the opera-- tion of some lawful measure, or be absolutely repugnant to some constitutional law of the Union. When laws become repugnant to each other, the supreme or paramount law must and will prevail. There can be no doubt of the fitness and necessity of this result, in every mind that entertains a just sense of its duty and loyalty. Suppose there was a provision in the act of Congress, that all vessels duly licensed, should be at liberty to navigate, for the purpose of trade and commerce, over all the navigable bays, harbours, rivers, and lakes within the several states, any law of the states, creating particular privileges as to any particular class of vessels, to the contrary notwithstanding ; the only question that could arise in such a case, would be, whether the law was constitutional. If that was to be granted or decided in favour of the validity of the law, it would certainly, in all Courts and places, overrule and set aside the state grant. But, at present, we have no such case, and there is no ground to infer any such supremacy or intention, from the act regulating the coasting trade. There is no collision between the act of Congress and the acts of this state, creating the steam boat monopoly. The one requires all vessels to be licensed, to entitle them to the privileges of *American* vessels, and the others confer on particular individuals, the exclusive right to navigate steam boats, without, however, interfering with, or questioning the requisititions of the license. The license is admitted to be as essential to these boats as to any others. The only question is, who is entitled to take and enjoy the license? The suggestion that the laws of the two Governments are repugnant to each other upon this point, appears to be new, and without any foundation. The acts granting exclusive privileges to *Livingston* and *Fulton,* were all passed subsequent to the act of Congress ; and it must have struck every one, at the time, to have been perfectly idle to pass such laws, conferring such privileges, if a coasting license, which was to be obtained as a matter of

course, and with as much facility as the flag of the *United States* could be procured and hoisted, was sufficient to interpose and annihilate the force and authority of those laws. If the state laws were not absolutely null and void from the beginning, they require a greater power than a simple coasting license, to disarm them. We must be permitted to require, at least, the presence and clear manifestation of some constitutional law, or some judicial decision of the supreme power of the Union, acting upon those laws, in direct collision and conflict, before we can retire from the support and defence of them. We must be satisfied that

> *Neptunus muros, magnoque emota tridenti*
> *Fundamenta quatit.*

2. If the defendant has any right to navigate his steam boats upon the waters of the state, he must have derived it under the representatives of *Livingston* and *Fulton*. But the grant he sets up was subsequent to the deed from *L.* and *F.* to *John R. Livingston*, under whom the plaintiff holds his title; and if the pretensions of the plaintiff under that deed are well founded, the defendant fails in his defence.

The deed to *John R. Livingston*, conveys " all the right which *L.* and *F.* possessed, exclusively to navigate with steam boats from the city of *New-York*, south of the state prison to *Staten Island, Elizabethtown Point, Perth and South Amboy*, and the river *Rariton* up to *New-Brunswick.*" The defendant says, that *Halsted's Point* (between which and the city of *New-York*, his boats navigate) is "within the township of *Elizabethtown*, but separated from *Elizabethtown Point*, by a large and navigable creek." "That his wharf, at *Halsted's Point*, is within a short distance of *Elizabethtown Point*," and yet he denies that he is sailing within the limits of the grant to *J. R. L.* Whoever is acquainted with the position of the land and waters at and adjoining

*Elizabethtown Point*, or will cast his eye upon a map of that country, will at once perceive, that upon the defendant's construction of the deed of *J. R. L.*, the grant to him was vain and illusory, as a beneficial exclusive privilege. If *L.* and *F.*, notwithstanding that deed, retained in themselves the right to run steam boats to and from *Elizabethtown* and *New-York*, by starting from the opposite side of the small creek that runs, at *Elizabethtown Point*, into the bay or sound; the right in *J. R. L.* was, in effect, no longer exclusive, but common. This is certainly not the sound construction of the deed, which gave him the right to navigate *exclusively* within its prescribed limits. It is to be so construed as to have value and effect, as an exclusive right. For this purpose, *Elizabethtown Point* must be considered as including the whole shore or navigable part of *Elizabethtown*; and this appears to be the clear and necessary interpretation of the grant, when we take into consideration the situation of the ground and waters, and the nature and object of the grant. Any narrower construction in favour of the grantors would render the deed a fraud upon the grantee. It would be like granting an exclusive right of ferriage between two given points, and then setting up a rival ferry within a few rods of those very points, and within the same course and line of travel. The common law contained principles applicable to this very case, dictated by a sounder judgment and a more enlightened morality. If one had a ferry by prescription, and another erected a ferry so near it as to draw away its custom, it was a nuisance, for which the injured party had his remedy by action. (*Bro. action sur le case*, pl. 57. tit. *Nuisance*, pl. 12. 2 *Roll. Abr.* 140. pl. 20, 3 *Black. Com.* 219.) The same law and remedy were applied to the case of a fair or market, in which an individual had a freehold interest, if another fair or market was erected, and used, within its vicinity. (*F. N. B.* 184. and notes, 2 *Roll. Abr.* 140. pl. 1, 2, 3. *Yard* v. *Ford*, 2 *Saund.* 172.) The same rule applies, in its spirit and substance, to-

all exclusive grants and monopolies. The grant must be so construed as to give it due effect, by excluding all contiguous and injurious competition.

The grant of an exclusive right to run steam boats between *New-York* and *Elizabethtown Point*, was intended to comprehend the entire benefit of all the travelling, and passengers going to and from *Elizabethtown* and *New-York*. It meant to embrace the whole stream of intercourse between these two places, and *Elizabethtown Point* was used for the landing place of the town. No other landing place occurred to the parties, or it, doubtless, would have been inserted. The intention of the instrument is clear and palpable. It is to be deduced from the general description, and the nature of the grant as an exclusive privilege, and the particular locality of the land and waters in question. Any other construction is unreasonable, and incompatible with the object of the grant, and with the principles of the common law applicable to the case. An exclusive right to navigate with steam boats between the city of *New-York* and *Elizabethtown Point*, includes in it the use of the waters on the usual passage between those *termini*, in exclusion of the use of those waters on such a passage or route, by any other steam boat. It is like the grant of an exclusive right of way, and no stranger has a right to use it. (*Finch's Law*, 31.)

In the subsequent grant from *J. R. L.* to the plaintiff, the existence of his right under the deed of 1808, to the entire navigation between *New-York* and *Elizabethtown*, as well as *Elizabethtown Point*, was assumed. It was also provided, that an exclusive grant to navigate to the latter place, should exclude any interfering navigation to the other. There was an interval of seven years between the deed of 1808 and this latter deed, in all which time we are led to infer that *J. R. L.* had enjoyed the exclusive right under his deed, to the extent now set up by the plaintiff, and

that both parties to the deed of 1808 had given it that practical construction. But if the deed of 1808 was liable to doubt and difficulty upon this point, the sense of the parties was more explicitly declared in the deed of the 29th of *December*, 1815, which was also prior to any deed under which the defendant sets up a right. This last deed was from the representatives of *L.* and *F.* to the plaintiff, and *T. M.;* it was a covenant with them to release and confirm to the owners of any steam boat owned and run on the *Hudson* river, or on the sound between *New-York* and *Long Island,* or between *New-York* and *Elizabethtown Point,* or *Elizabethtown,* to the whole extent of the township, all the right and title which they then held. The plaintiff was, at the time, owner of a steam boat running between *Elizabethtown Point* and *New-York,* and there was then *no other* subsisting grant under *L.* and *F.,* relative to a navigation between *New-York* and *Elizabethtown,* or any part of it, but the one to *J. R. L.* The covenant to release and confirm, in respect to those waters, applied to that grant, and to none other; and when the representatives of *L.* and *F.* speak of running between " *New-York* and *Elizabethtown Point,* or *Elizabethtown,* to the whole extent of the township," they give a construction to the former deed, and recognize a right out of them, to the reasonable and just extent which the grant imported. They must have considered the right under *J. R. L.* in that broad extent, as then subsisting and held, or they would not have used such pointed and strong description, when speaking of that right. The expression was evidently intended to be *declaratory* of the meaning and operation of the former deed. The words have no sense, or meaning, or application, in any other view; and neither the representatives of *L.* and *F.,* nor those claiming under them, can now be permitted to put a narrower construction upon their former grant, and especially a construction injurious, if not repugnant to its end and design, as the grant of an exclusive privilege.

It is, however, an act of justice to those representatives, to observe, that no subsequent attempt appears on their part, to defeat or impair the right previously granted.

The defendant sets up a right to navigate steam boats between *Elizabethtown* and *Halsted's Point* and *New-York*, derived under the deed from the representatives of *L.* and *F.* of the 14th of *September*, 1816, to *Daniel D. Tompkins* and *Adam* and *Noah Brown.* The extent of this grant is partly described in the defendant's answer, and partly given by a reference to the deed. It was " the right of navigating, for all purposes whatsoever, steam boats upon, over, and across the waters of the bay of *New-York*, *Staten Island* sound, the outward harbour, including *Prince's* and *Gravesend* bays, a part of the *Atlantic* shore, and *Jamaica* bay, &c. And, also, the right to stop and land passengers, and discharge cargoes, at the city of *New-York*, and the sole and exclusive right of navigating with steam boats to and from the city of *New-York*, to and from *Shrewsbury* bay and rivers in the state of *New-Jersey, Sandy Hook, Spermaceti Cove*, and the shores and waters adjacent thereto, lying within, and to the southward of *Sandy Hook, Fort Diamond*, and the shores of *Long Island*, from *Denise's* heights inclusive, southerly along *Gravesend* bay, &c. And the sole and exclusive right of touching at any point, on the easterly and southerly side of *Staten Island*, and any point or place on the said shores, at which the parties of the first part may now stop or touch, consistently with the rights heretofore granted." This deed was not intended to interfere with the former grant to *J. R. L*, and the only part of it that looks like an interference, is in the expression *Staten Island sound*. But we find, afterwards, in the deed, that expression explained by the liberty given (though very cautiously, and at the risk of the grantees) to stop and touch at any part on the *easterly and southerly side of Staten Island*. There is no liberty to stop or touch, or deliver or receive passengers or freight, at any port or place in *Staten*

*Island sound*   There is no privilege granted to navigate between *New-York* and *Elizabethtown*, or to touch, or receive, or land passengers; and every assumption of such right, as derived from and under that deed, is manifestly groundless.   If any right be given to navigate on the route to that place from *New-York*, it is only a water passage through *Staten Island sound;* and every act in carrying passengers, as between *New-York* and *Elizabethtown*, under colour of that deed, is a trespass upon the rights of the grantors, or their lawful assignees.

If the grantees in that deed had no such right, they had none to impart to others, and it becomes unnecessary to examine into the legal import and operation of the subsequent deeds from those grantees to the defendant.

There was an objection raised in the answer, to the not making of *Thomas Morris* a party, because his name is mentioned in the deed of the 29th of *December*, 1815.   But as it is no where averred, nor does it appear, that Mr. *Morris* was the owner of any boat to which the covenant in that deed applied, he had no interest in this cause, and there was no need to make him a party.

Every branch of the right and title set up in the answer, as matter of defence, appearing to be without support or solidity, the motion to dissolve the injunction is, consequently, denied.   As the injunction was, however, granted before the decision on the 3d of *May* last, in the cause of *Livingston* v. *Ogden and Gibbons*,* it might, perhaps, be more extensive than the doctrine laid down in that decision would warrant.   I shall, therefore, so modifiy or explain the operation of the injunction, as to confine it to the whole of the waters in the bay of *New-York*, on the passage or route between the city of *New-York* and *Elizabethtown Point* or *Elizabethtown*, or any part thereof, and not apply it to the waters of the Sound that lie between *Staten Island* and the state of *New-Jersey*, so long as the boats of the defend-

* *Ante*, p. 48.

ant do not leave the Sound, on their passage to the city of *New-York*.

Order accordingly.(*a*)

(*a*) On *appeal*, this decretal order was unanimously *affirmed*, by the Court for the Correction of Errors, *April* 27th, 1820. Vide 17 *Johns. Rep.* 488—510. S. C.