ATLANTIC CITY WATER WORKS COMPANY

*v.*

ATLANTIC CITY et al.

The complainants were incorporated, under a general statute, to supply Atlantic City, the defendant, with water. They afterwards contracted with the city for that purpose, and thereby accepted the provisions of certain ordinances regulating the mode of supplying the water, both for public and private purposes. They received in return exemption from municipal taxation, and also the exclusive privilege of furnishing water to the city and its inhabitants. They constructed their works at a large expense, and supplied the water, as required by their contract, satisfactorily.—*Held*, that whether or not the city's grant of the exclusive privilege of furnishing water was *ultra vires*, and void as creating a monopoly, the city had exhausted its power as to providing a water supply; that the complainants' franchise was exclusive, and that conse-

quently, this court would, by injunction, protect the complainants against any invasion of their rights by persons laying water-pipes &c., under municipal authority, to compete with them unlawfully.

Bill for an injunction.    On motion to vacate order to show cause &c.

*Mr. H. L. Slape,* for the motion.

*Mr. S. H. Grey* and *Mr. P. L. Voorhees,* contra.

THE CHANCELLOR.

The bill is for an injunction. It states that the complainant was incorporated October 25th, 1880, under the act "for the construction, maintenance and operation of water works for the purpose of supplying cities, towns and villages in this state with water," approved April 21st, 1876, to supply Atlantic City with water ; that the city gave the requisite preliminary consent to the incorporation, and that on the next day after the company was incorporated it entered into a contract with the city by which the company agreed to keep, observe and execute all the stipulations and conditions of an ordinance of the city, entitled "An ordinance to provide a supply of water for Atlantic City," which ordinance was approved October 21st, 1880, and a copy thereof was annexed to the certificate of incorporation of the complainant; that in consideration thereof the city covenanted with the complainant that it would not grant to any other person or persons or body politic or corporate the right to lay water-pipes beneath the surface of the public avenues, streets, lanes or alleys of the city for the purpose of supplying water to the city or the inhabitants thereof; that after making that covenant the city passed another ordinance, supplemental to the before-mentioned one, which the complainant accepted and agreed by written agreement to observe, keep and perform all the stipulations, provisions and conditions contained in the two ordinances; that the complainant, on the faith of those agreements between it and the city and the before-mentioned covenant by the city, constructed

its works at a great expense (about $240,000), and ever since the summer of 1882 has supplied the city and the inhabitants with water according to the terms of the agreements and its obligation in the premises, and that the city is now, in violation of its covenant, about to give to certain other persons the right to lay pipes for furnishing water to the city and the inhabitants thereof. The bill seeks to restrain it from doing so. On the filing of the bill, an order to show cause why an injunction should not be issued in accordance with the prayer of the bill was made, with an *ad interim* stay. The city now moves, on the bill alone, to vacate the order and the stay, on the ground that the covenant was designed to secure to the complainant a monopoly, and therefore was *ultra vires* and is of no effect.

The city council was empowered by the charter to pass such ordinances as they should judge proper for (among other things) providing a supply of water for the city. *P. L. of 1866 p. 318.* To this end it passed the ordinances mentioned in the bill and entered into the before-mentioned contract with the complainant, and thus, so far as appears and as is alleged in the bill, not only provided for but actually secured and obtained such supply.

The before-mentioned act " for the construction, maintenance and operation of water works for the purpose of supplying cities, towns and villages of this state with water" (*Rev. p. 1365*) provides that any number of persons, not less than seven, a majority of whom shall reside in this state, may form a company for the purpose of constructing, maintaining and operating water works in any city, town or village in this state having a population of not more than fifteen thousand and not less than two thousand inhabitants, and for the purpose of supplying such city, town or village and the inhabitants thereof, with water; that such persons desirous of forming a company for such purpose shall make, sign and acknowledge a certificate stating the corporate name adopted by the company, the amount of capital stock, the term of existence of the company, the number of directors, and the names of those who shall manage the affairs of the company for the first year, or until their successors are elected and qualified, and the name of the city, town or village

24

in or for which such works are to be constructed and the business of the company carried on ; which certificate shall be filed in the office of the secretary of state, together with the consent of the corporate authorities, if any, of the town or city proposed to be supplied with water, and that when such certificate and consent shall have been filed, the persons who shall have signed and acknowledged the former, and their successors, shall be a body politic and corporate, and shall have power as such to take and divert any and all such springs and streams of water, and build and maintain such works, and lay such pipes and conduits as may be necessary and proper to enable the company to carry into effect the purposes of its incorporation. The act gives the company power of condemnation &c., and authorizes and empowers it to lay its pipes beneath such public roads, streets, avenues and alleys as it may deem necessary for the before-mentioned purposes, and to place hydrants at the crossings or intersections of such streets and alleys, free of all charge, for the privilege ; provided that the pipes shall be laid at least three feet below the surface of the street or road &c., and that the consent be obtained of the corporate authorities, if any there be, of the town in which the pipes may be laid. The act provides that the company may sell and dispose of the water from its reservoirs, aqueducts or pipes for such price or rents, and with such restrictions as it shall think proper.

The before-mentioned ordinance of October 21st, 1880, granted to John W. Moffly, Walter Wood, and their associates, or such company as they might form under the laws of this state, permission to lay pipes beneath the surface of the avenues, streets, lanes and alleys of the city upon condition that the pipes to be laid should at all times be sufficient to furnish the city and all the inhabitants thereof, and all the visitors thereto, with a continuous and uninterrupted supply of water of a quality and quantity sufficient to meet all public and private requirements ; and it declared of what character and quality the pipes should be; that nothing but pure, fresh water should be conducted through the pipes ; that the water should come from artesian wells, but if the company should fail to obtain it from such sources, it

should be collected from the streams or springs on the main land, west of the salt meadows, and should be effectually guarded against contamination, and kept as pure until served as it is in the streams or sources from which it is taken; that the company should construct in the city a tank or tanks, or a stand-pipe, sufficiently large and strong to hold, and which should, at all times, contain, at least, one hundred and eighty thousand gallons, at an elevation of not less than eighty feet from the level of the street, and to be properly connected with the pipes for distributing the water; that the company should, at all times, furnish the city with a full and uninterrupted supply of water for extinguishing fires, sprinkling streets, and for use at the public buildings, including school-houses; the water for public buildings to be furnished free of charge; that the company should place fire hydrants, of a specified character, in such place in the built-up portion of the city as the city council might, from time to time, designate; that the rights and privileges granted should be subject to the act " for the construction, maintenance and operation of water works, for the purpose of supplying cities, towns and villages in this state with water;" and that in case the company should not comply with all the conditions of the ordinance, for a period of thirty days after notice given to it by the city council, the provisions of the ordinance should cease, terminate and become void without further notice. It was also provided that the company should begin work, under the ordinance, within thirty days after its passage, and complete it in one year thereafter, and that the ordinance should take effect as soon as the company should enter into articles of agreement (to be executed in five days after the passage of the ordinance) with the city, binding the company to execute all the stipulations and conditions of the ordinance. The company duly accepted the ordinance, by an agreement made on the 26th of October, 1880, five days after the day on which the ordinance was approved. The agreement was executed by both the city and the company. It recognized the complainant as the company formed under the laws of this state by Moffly and Wood and their associates, as mentioned in the ordinance. By that agreement the company

bound itself to keep and perform, observe and execute, well and truly, all the stipulations, provisions, conditions, · matters and things contained, set forth and 'stated in the ordinance, and the city, on its part, entered into the before-mentioned covenant. The amendatory or supplementary ordinance was approved November 19th, 1880, and the other agreement was made subsequently, and in pursuance of the provisions of that ordinance. That ordinance gives the permission to lay the pipes, to the company by name, provides that the company shall construct a standpipe of the capacity and height mentioned in the original ordinance; that it shall furnish a supply of water as provided for in the original ordinance, and that the fire hydrants in the built-up portion of the city shall not be less in number than fifteen for every mile of pipe laid from the pumping station for distributing the water in and through the city. It limits the number of water-carts for sprinkling the streets, and provides that the pipe distribution shall be not less than ten miles in length, exclusive of the pipes, to bring in the water from the source of supply to the pumping machinery. On the other hand, it provides that the property and franchises of the company belonging to the water-works shall be exempt from municipal taxation " during the life of the franchise" therein " granted," and so long as the company, its successors or assigns, shall continue to own, maintain and operate the water works in accordance with the provisions of that ordinance, and that all the stipulations, conditions and agreements contained in that ordinance shall continue in force so long as the company complies with the provisions of that ordinance and the original one, except in the event of forfeiture as therein mentioned.

The provision for forfeiture thus alluded to is that in case the company shall neglect or fail to comply with the provisions of that ordinance for thirty days after notice given to it by the city council (reasonable time to be allowed for repairing any damages caused to the works by unforeseen accidents), then all the provisions of that ordinance shall cease, terminate and become void without further notice. The amendatory or supplementary ordinance appears to have been designed for the purpose of directly

recognizing, contracting with and binding the company by name in the ordinance for the supply of water, and adding conditions to those in the original ordinance, and for the purpose of giving to the company further advantages than those which it had under the original ordinance. The company and the city, on November 19th, 1880 (the same day on which the amendatory ordinance was approved), entered into an agreement by which they mutually covenanted with each other to keep, perform, observe and execute well and truly all the stipulations, provisions, conditions, matters and things contained in both of the ordinances, on their respective parts to be kept, performed, observed and executed, according to the true intent and meaning thereof. Both agreements were produced on the argument and read, by consent. The covenant that the city will not grant to any other person or persons, or body corporate or politic, the right to lay water-pipes beneath the surface of the public avenues, streets, lanes and alleys of the city, for the purpose of supplying water to the city and the inhabitants thereof, is, as before stated, in the first agreement, and was made on the condition that all the provisions, stipulations and conditions contained in the original ordinance and in the agreement of which the covenant was part, should be well and truly kept and performed, observed and executed by the complainant, its successors and assigns. The complainant alleges that it has kept its agreements and has done its whole duty in the premises. Of the power of the city to make the contract (apart from the covenant), there can be no question. The city had power, by its charter, to provide for a supply of water, and in this power is implied the power to furnish the supply by contract. The water company was incorporated for the purpose, and only for the purpose, of supplying the city with water, and all its franchises were acquired and its money expended for that object alone. Its expenditures, which have been very large (nearly a quarter of a million of dollars), have been made solely for the exercise of its franchises in that place. That the legislature contemplated the making of contracts by cities for a supply of water is manifest from the method which it provided for furnishing them with such supply, viz.,

the formation of companies, with their consent, to supply water to them. It is also further evidenced by the provisions of the act of 1881 " to authorize municipal corporations to contract for a supply of water for public uses " (*P. L. of 1881 p. 118*), the proviso of which limits such contracts to the period of ten years, with a further proviso that the act shall not apply to any city which, at the passing of that act, was supplied with water for public use pursuant to an existing contract or arrangement with some board or corporation. See, also, the amendatory act of 1884. *P. L. of 1884 p. 324.* It is obvious that it would be found necessary, in order to induce a company to invest its capital in the enterprise of furnishing a supply of water to a city, to secure the company by contract against competition which would not only diminish its profits but might deprive it of all adequate return for its outlay and destroy the enterprise. And where, under the power to provide for a supply of water to the city, the municipal authorities have, by contract, made such provision, it is quite clear that the company with which they have so contracted is entitled to protection against the breach of the contract on their part. The cases cited by the defendants' counsel as authority for the proposition that such a covenant as that made by the city in this case is *ultra vires*, are cases in which the grant of a monopoly in the furnishing of illuminating gas was held to be beyond the powers of a municipality. The principal case is *Norwich Gas-Light Co.* v. *Norwich City Gas Co.*, *25 Conn. 19*, in which it was held that the city had not the power to grant to a gas company exclusive use of the streets for laying gas-pipes. It was also held in that case that the legislature itself had not such power. In *State* v. *Milwaukee Gas-Light Co.*, *29 Wis. 454*, it was held that the legislature might confer upon a private corporation the exclusive right to manufacture and sell gas and to erect works and lay pipes therefor within the limits of a municipal corporation. In *State* v. *Cincinnati Gas-Light and Coke Co.*, *18 Ohio St. 262*, it was held that in the absence of authority from the legislature to do so, the city of Cincinnati had not the power to grant such exclusive right; but the court declined to enter upon the consideration of the question

whether the legislature had such power. The right of the company to protection in this case does not depend upon the covenant. If the city has, by the contract with the complainant, secured a supply of pure and wholesome water, and that contract was fairly obtained by the company, and the company has observed and kept the agreement, there appears to be no good reason why it should not be protected against the destruction or diminution of the value of its property by means of competition.

The city having already executed the power of furnishing a supply of water, and being abundantly supplied, an attempt on its part, in violation of its contract, to create such competition, could not be justified on the ground that it is a further exercise of that power. It is noticeable that not only do the ordinances provide for a supply of water, but the original one is entitled "An ordinance to provide a supply of water for Atlantic City." The city must be regarded as having executed the power so long as the complainant performs its obligations. As matters now stand, the city has provided for and obtained a supply, and it has, therefore, now no power to make any further provision on that head, for there is no room for any; the city is already supplied. Assuming, as we must on the argument of this motion, that the statements of the bill are true, there is no reason or excuse for the proposed breach of faith. The only excuse offered is that the city is not bound by the covenant, because it was *ultra vires.* The ordinances were a contract on the part of the city with the company. The covenant itself is evidence of the contract. Leaving the covenant entirely out of view, and considering the subject in the light of the contract merely, if it be admitted that the company has hitherto performed, and is still prepared and proposes to continue to perform its part of the agreement, it is entitled to protection. It has made very large expenditures on the faith of the agreement that it should have the privilege of supplying the city with water, and it would manifestly be highly unjust and inequitable to hold that the city has the power and may exercise it, of diminishing, if not of destroying, at will, the value of the company's investments made on the faith of the

contract. The legislature necessarily contemplated the expenditure by the company of its funds for the purpose for which it was created, and it cannot be supposed that it intended that the company should have no security against competition which might deprive it of all advantage of its large outlay. The franchise granted by the legislature to the company is, by necessary implication, exclusive. The purpose for which it was granted shows that it must have been intended to be so. It was bestowed for a single object—the supplying of Atlantic City with water. The requirement that the city consent to the creation of the corporation gives strength to the inference. Equity will protect a corporation entitled to the enjoyment of an exclusive franchise, against unlawful competition. *Del. and Rar. Can. Co.* v. *Rar. and Del. Bay R. R. Co.*, 2 McCart. 13 ; Ogden v. Gibbons, 4 Johns. Ch. 150 ; Newburgh Turnpike Co. v. Miller, 5 Johns. Ch. 101. So long as the company shall continue to supply the city with pure and wholesome water at reasonable rates it will be entitled to protection against unlawful competition. It is not necessary to that protection, however, to prevent the city from granting permission to others to lay pipes. The remedy is to restrain such persons, whether natural or artificial, from availing themselves of the permission, to the prejudice and injury of the complainant. The motion will be granted.