(37 Misc. Rep. 746.)

### NEW YORK CEMENT CO. v. CONSOLIDATED ROSENDALE CEMENT CO. et al.

(Supreme Court, Special Term, Ulster County.  April, 1902.)

1. CANAL—PUBLIC TRUST—REGULATION OF TOLLS.

A canal constructed by a corporation under Laws 1823, c. 238, with power of eminent domain to acquire land, as well as the right to divert the waters of the Delaware and of the Hudson rivers, and actually using some of the bed of a public stream, is impressed with a public trust; and the owner, by whatever name it calls its transportation business, operates it subject to such interest, authorizing regulation of tolls thereof.

2. SAME—SALE OF CANAL—RIGHTS OF PURCHASER.

Where the legislature, under Laws 1899, c. 469, authorized a canal company created by Laws 1823, c. 238, to lease, sell, or discontinue the use of the canal, or any part of it, and the corporation sells it to a steamboat company, and under such company a cement company becomes the owner of 12 miles of the canal under the same obligation, and maintains that part, the cement company, so long as it maintains the part, cannot exact for the use of it from another similar corporation, located on the banks of the canal which had used the canal for 40 years, any greater tolls than were fixed by the original statute (Laws 1823, c. 238. § 12) to be collected by the canal company, or exact tolls that are unreasonable and excessive.

Action by the New York Cement Company against the Consolidated Rosendale Cement Company and others.  Motion for a temporary injunction granted.

Linson & Van Buren, for plaintiff.
Kellogg & Rose (A. T. Clearwater, of counsel), for defendants.

BETTS, J.  In the year 1823, by chapter 238, the legislature of the state of New York incorporated the Delaware & Hudson Canal Company for the purpose of constructing a canal or slack-water' navigation between the Hudson and Delaware rivers, giving to said corporation power of eminent domain for the purpose of acquiring land for the purpose of constructing said canal, and necessary to its use, and provided, among other things, that, for the purpose of supplying said canal with water, said corporation might divert the waters of the Delaware and Hudson rivers and of other streams.  The canal was constructed, and, among other streams, a portion of the waters of which was diverted, was the Rondout creek, for the purpose of supplying the eastern end of said canal.  Section 12 of said act provided, among other things, that "as soon as the said canal and navigation, or any fifteen miles thereof, shall be completed so as to allow of the passage of boats," collectors might be appointed to collect such tolls and rates as the managers of said corporation might think proper, and continued:

"Provided, that the said toll shall not in the whole, exceed the rate of eight cents per mile, for every ton weight of the ascertained burthen or capacity of any boat, ark, craft, or vessel, laden with, or engaged in the transportation of stone coal; and one-half that sum for every ton weight of the ascertained burthen or capacity of any boat, ark, craft, or vessel, laden with, or engaged in the transportation of any other article of merchandise."

The act discloses that the business for which this corporation was formed was the mining and transporting of stone coal from mines in Pennsylvania to tide water of the Hudson river, and, as incidental thereto, such other commodities might be carried or transported over said canal as might be offered; the only restriction as to rates being that the maximum should not exceed the rates provided for in said section 12.

It is clear, therefore, from the law referred to, that, prior to 1899, if the Delaware & Hudson Canal Company had sought to charge rates in excess of those fixed by its charter, such rates would have been illegal, and the court, upon proper application being made, would have issued its restraining order preventing such collection. In the year 1899 the legislature, by chapter 469 of the Laws of New York, provided, in effect, that whenever it appeared to the managers of said canal company that it was able to fulfill its purpose of opening, mining, aml bringing to market a supply of stone coal more economically by rail than by its canal, it should be lawful for said company, and it was thereby authorized and empowered, to lease, sell, or discontinue to use said canal, or any parts thereof, which, in their judgment, was no longer necessary for said purpose. Acting under the authority of the statute, the Delaware & Hudson Canal Company sold the entire canal to the Cornell Steamboat Company in June, 1899. The deed for the canal, after referring to the statute of 1899, recites that the grantor, in accordance with the provisions of said act, has resolved to sell its said canal to the Cornell Steamboat Company, and by that conveyance it conveys "all its right, title, interest, claim, and possession in and to the Delaware and Hudson Canal, * * * rights to divert and use water for canal purposes from the * * * Rondout creek, * * * so long as said canal shall be maintained as such," which is followed by a general description of the property and nature of the interest conveyed, and "also all the franchises owned, possessed, used, or enjoyed by the said Delaware Company in connection with the ownership, use, and operation of said canal," and the grantee therein assumes the obligations imposed upon the grantor by said section 4 of chapter 469 of the Laws of 1899.

It appears by the papers used on this motion that by direct or mesne conveyances the defendant cement company now owns that portion of said canal extending from tide water in the village of Eddyville to the Marbletown line, in Ulster county,—a distance of about 12 miles; and the portion desired to be used by the plaintiff is the extreme eastern portion,—a distance of about 5 miles in length. Since the year 1861 this plaintiff has used said canal for the purpose of transporting its manufactured cement from its mills at Le Fever Falls to tide water at Eddyville. Its mill for manufacturing said cement is situated upon the banks of said canal. This use has been continuous under the Delaware & Hudson Canal Company and under the Cornell Steamboat Company. The toll paid by the plaintiff for such use has uniformly been at the rate of about 4 cents per ton per mile, being the maximum rate fixed under the statute of 1823, and being 3⅓ cents per barrel of cement. Its business has been large, and a great amount of cement has been thus shipped annually. Upon the opening of navigation, or

about the time, in this year (1902), the plaintiff was notified by the defendant Ralph Burger, the toll collector for many years stationed at Eddyville under the Delaware & Hudson Canal Company, and later under the Cornell Steamboat Company, and now employed by defendant cement company, that the officers of the defendant cement company had advanced the rate of toll from 3⅕ cents per barrel of cement to 16 cents per barrel (being a fivefold increase), and that such toll or charge must be paid before the boat containing cement could pass through the lock.   A boat load of cement was sent to the lock at which said Ralph Burger was, and for many years had been, stationed, and a tender in gold was made of a sum of money sufficient to pay the maximum rate of toll provided for by the statute of 1823, and the uniform price previously paid.   This sum was refused, and the boat was not permitted to pass through the lock into the tide waters of the Hudson river, whereupon this action was brought for the purpose of obtaining an injunction against the defendants to prevent them from collecting said proposed rates of toll, claimed to be excessive, unreasonable, and illegal for the transportation or conveyance of plaintiff's merchandise over and through said canal; and this application is made to me, sitting at chambers, for a temporary injunction for the same relief.

The plaintiff claims that it cannot pay the rate attempted to be charged, of 16 cents per barrel, and manufacture cement at a profit; that, if this rate be maintained, it will have to cease business and close its works; and that, taking into consideration the expense connected with the manufacture and transportation of cement to the New York and other markets, the route along or through this canal is the only practicable way for it to carry on its business.   On the part of the defendant cement company it is urged that several of the large manufacturers of cement in the town of Rosendale have sold their said manufacturing plants to the defendant cement company for the purpose of lessening the cost of production of said cement; that said cement industry is threatened seriously by the Portland cement now being manufactured in this country, and that, for the purpose of reducing the expense of manufacturing and marketing said Rosendale cement, this defendant cement company, owning the greater portion of the mines from which this cement is manufactured in the town of Rosendale, and the necessary plants for manufacturing the same, has purchased this 12 miles of the canal, and is operating it not as a canal, in the ordinary acceptation of the term, but as a private way of its own to carry its manufactured product to tide water, and as an incident to its cement business, for the purpose of reducing the price of the manufactured article, and producing the same at a lessened cost; that it is not a common carrier, does not desire business of plaintiff or of any other person, but that, simply as a matter of accommodation to the plaintiff and others doing business along said canal, it has expressed a willingness to transport the goods manufactured or purchased by them, provided said parties would compensate the defendant cement company, to some extent, for its expense in the maintenance of the portion of the canal now owned by it.   It also claims that the rates fixed by the original charter were for the whole 110

miles of the canal, and that it is unreasonable to suppose that the legislature should intend, if the Delaware & Hudson Canal Company sold its canal, and a portion thereof was continued as a canal, that the same low rates should be charged and received for 12 miles as were fixed as sufficient for the 110 miles; and it alleges that the reason why the legislature gave the Delaware & Hudson Canal Company permission to discontinue the canal was because transportation by canal had become obsolete, and the property was not a paying one. It also claims that it costs to maintain the canal about $40,000 per year, while, judging by previous years, the entire traffic of the plaintiff would not exceed $9,000, at the rate allowed by the charter, and that it should not be required to do business at a loss for the benefit of plaintiff. These are some of the principal reasons advanced by the defendant cement company why the temporary injunction should not now be granted.

This 12 miles of the canal has never been abandoned or discontinued. The Delaware & Hudson Canal Company was authorized to sell, and did. Its property and its franchises were conveyed to the Cornell Steamboat Company, and, as a matter of law, its obligations connected with the use thereof while the canal was being conducted were assumed by that company. The deed to the Cornell Steamboat Company is used on this application. The deed to this defendant cement company is not produced. The plaintiff did not produce it, and perhaps could not. The defendant cement company could, but did not, so that, while I have before me the facts relating to the transfer from the canal company, I have not the instrument by which the defendant cement company took title. Since this deed could have been produced by the defendant cement company, and was not, it may fairly be assumed that nothing is contained in that instrument that would strengthen the position assumed by the defendant cement company before me on this question. The Cornell Steamboat Company certainly could not convey any greater interest or rights in this property than it acquired from the canal company, and it does not appear that it conveyed any less. This property has been, from its original acquirement by the Delaware & Hudson Canal Company, affected or impressed with a public interest. Selden v. Canal Co., 29 N. Y. 634. This was evidenced very plainly by giving to the corporation the power of eminent domain to acquire lands, which is never given without being for a public purpose, and from the fact that the company was given authority to, and did, divert water from many streams,—among others, the Rondout creek, a p' blic stream; the title of the adjacent owners being merely to the banks thereof. This land is still held by the same title by this defendant cement company, so far as appears, and the waters of the Rondout creek are still being diverted for the purpose of filling and using said canal under the same authority originally granted to the canal company, and its rights acquired under its charter. For two miles, or over, near Eddyville, this defendant cement company uses this Rondout creek as a water way or canal; no ditch or prism being constructed, and the boats being floated therein, drawn by horses on the towpath along the bank of said creek. Even the nature of the business proposed by this defendant cement

company is very like the business originally proposed for the entire canal by the Delaware & Hudson Canal Company.   The Delaware & Hudson Canal Company proposed mining and transporting stone coal, principally from Pennsylvania to the tide water in New York, and its other transportation business was incidental to its main business, and the legislature fixed a low toll rate for this additional business. The defendant cement company proposes mining, manufacturing, and transporting its own cement principally over this portion of the canal; and such other traffic as it takes is incidental to this main business, and is alleged to be simply as an accommodation for those parties desiring to use it.

The ownership and operation of the canal are admitted by the answer. The contention that the legislature had only in mind the whole 110 miles of traffic, in fixing this rate, is disposed of by reference to the statute, which allows this rate to be fixed and maintained as soon as any 15 miles is completed; and the entire cement business, apparently, of the town of Rosendale, using the canal, has been carried at that rate ever since cement was manufactured there, and it may perhaps be fairly assumed that this cement business was the most profitable for the canal of any local business it had, aside from its regular business of transporting coal.   The figures produced by the defendant cement company as to the cost of maintenance of the canal, and the revenue to be derived from the traffic of the plaintiff, do not state the position of the plaintiff as disclosed by the papers submitted.   The plaintiff does not ask in this action that the defendant cement company should maintain a canal for its benefit.   It simply asks that, the canal being maintained, it should have the right to use it by paying a reasonable toll or compensation therefor.   The defendant cement company does not place any value in its figures submitted for its own use of the canal, which, from its own showing, must amount to many hundreds of thousands of barrels of cement transported through its canal during the season of navigation.   Besides, if the traffic of the plaintiff would amount to $9,000 per year at the rate fixed by the charter and proposed by the plaintiff, at the rate proposed to be charged by the defendant cement company it would amount to $45,000 per year; thus giving the defendant cement company the entire use of the canal, aside from the small portion of the time occupied by the plaintiff in sending its boats through, at no cost to said defendant cement company, and would put in its treasury $5,000 per year additional.   The figures produced are a strong argument against the reasonableness of the charge proposed by the defendant cement company for the comparatively small use which the plaintiff would make of this water way, being an average of two boat loads of cement and two empty boats through the canal each day.   I hold that this canal property, operated by the defendant cement company, is affected with a public interest, and that the said defendant cement company, by whatever name it calls its transportation business,—whether as an accommodation to plaintiff and others desiring to use it for the purposes of transportation, or otherwise,—operates it subject to that interest.   Thus holding, it follows that it cannot charge illegal, exorbitant, or unreasonable rates.

The plaintiff is therefore entitled, under the decisions, to the tempo-

rary injunction asked for, by showing either that the defendant cement company is the successor in interest of the Delaware & Hudson Canal Company, and controlled by the rates of toll fixed by the charter of that company (People v. Budd, 117 N. Y. 16, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77), or that the rates of toll proposed to be charged, if not regulated by law, are still unreasonable and excessive (Sterne v. Telegraph Co. [opinion of Justice Ingraham, not reported] 19 App. Div. 316, 46 N. Y. Supp. 110; McEntee v. Water Co., 165 N. Y. 27, 58 N. E. 785; Friedman v. Telegraph Co., 32 Hun, 4).

The temporary injunction prayed for may issue upon plaintiff giving a bond sufficient to indemnify the defendant cement company for its costs for all toll charges at the rates proposed to be charged by the defendant cement company pending the litigation. Ordered accordingly.