(38 Misc. Rep. 518.)

NEW YORK CEMENT CO. v. CONSOLIDATED ROSENDALE CEMENT CO.

(Supreme Court, Special Term, Ulster County. July, 1902.)

1. CANAL—DISCONTINUANCE.

Laws 1899, c. 469, §§ 3, 4, empowered the Delaware & Hudson Canal Company to discontinue the use of the canal which it had constructed between the Delaware and Hudson rivers. Thereafter a mesne grantee of such canal company posted along a part of the canal notices stating that it was private property, that it had been closed to the public use, and that trespassing therein was forbidden under penalty of the law. *Held*, that the act contemplated an actual physical discontinuance on the vote of the managers of the company, and such notice was not effectual as against a corporation entitled to use a part of the canal so long as that part remained a canal.

At chambers. Action by the New York Cement Company against the Consolidated Rosendale Cement Company for temporary injunction. Granted.

Linson & Van Buren, for plaintiff.

Kellogg &.Rose (A. T. Clearwater, of counsel), for defendant.

BETTS, J. In an action brought by this plaintiff a short time since against this defendant and two persons in its employ, I held, in substance, on an application made to me sitting at chambers for a temporary injunction, that the canal property owned and operated by the defendant was affected with a public interest, and that the defendant's operation thereof was subject to that interest. New York Cement Co. v. Consolidated Rosendale Cement Co., 37 Misc. Rep. 746, 76 N. Y. Supp. 469. Immediately subsequent to that decision the defendant posted notices along the canal property affected by that action and this, reading as follows:

"To the Public.

"Notice is hereby given that this canal is private property, and has been closed to the use of the public. Trespassing thereon is forbidden under penalty of the law.  Consolidated Rosendale Cement Company."

The defendant has since that time refused to permit any of the boats of the plaintiff to navigate its said canal property, claiming that it is private property, and that this plaintiff will not be permitted to pass through or over the same, by paying toll or otherwise. This action is brought to obtain an injunction restraining the defendant from so excluding the plaintiff from navigating said canal from its mills at Lefever Falls to tide water at Eddyville, and this application is made to me, sitting at chambers, for a temporary injunction to

restrain the defendant from the commission of said acts during the continuance of this action.

The facts, as shown on this hearing, are largely the same as were shown in the prior action, with the exception of the posting of the notices heretofore referred to, and the attempted total exclusion of the plaintiff; so that I shall briefly address myself to the proposition as to whether the defendant has actually "discontinued" the maintenance and use of said canal property as such as contemplated by the statute relied upon by it and hereinafter referred to, or in any manner acquired such exclusive rights as justify it in excluding the plaintiff from navigating the portion of said canal referred to in the complaint. The defendant claims the authority to thus close this canal to the use of the general public, and this plaintiff in particular, by chapter 469 of the Laws of 1899, and under mesne conveyances received from the Delaware & Hudson Canal Company under that statute. It appears here now that the use and maintenance of this portion of the canal was not discontinued (if it has been discontinued) by the authority granted by that statute by the Delaware & Hudson Canal Company, to whom the authority was given, nor was it discontinued by the Cornell Steamboat Company, its immediate grantee, but the claimed discontinuance, if any, has been by the defendant herein. It appears from the deed given to the defendant by the Cornell Steamboat Company that the entire canal property for the distance named, about 12 miles, with the "rights to divert and use water for canal purposes from the Rondout creek and other streams so long as said property shall be used and maintained as a canal," and "all the rights of the party of the first part in and to the franchises owned, possessed, used, or enjoyed by it in connection with the ownership, use, and operation of the said canal between the boundaries above specified," were conveyed to the defendant excepting and reserving to the Cornell Steamboat Company, its successors and assigns, "and to Samuel D. Coykendall, his heirs, legal representatives, or assigns, the right at all times, so long as such canal is operated, to pass canal boats through the canal, whether light or when laden with sandstone or cement slag, without paying toll or charges of any kind therefor." So that at least two other parties have the conceded right by this defendant to navigate this canal. Has this portion of the canal which the plaintiff desires to navigate been discontinued under the authority given and in the manner required by chapter 469 of the Laws of 1899? A fair answer to this question seems to be to point to the canal filled with water drawn from the Rondout creek, and in actual use. The defendant, however, strenuously insists that it has by its mere say so, by its mere formal announcement of its position and posting these notices, discontinued the use of the canal. I do not think that is the kind of discontinuance sanctioned or authorized by the statute upon which it relies. In the first place, section 3 of chapter 469 of the Laws of 1899 authorizes and empowers the Delaware & Hudson Canal Company, "by vote of said managers," to "discontinue to use or maintain said canal or any parts thereof." It does not appear that the managers ever voted to discontinue to use or maintain said

canal, which the legislature apparently imposed as a condition precedent to its discontinuance. It may fairly be inferred, however, that they did vote to sell said canal. In the second place, section 4 of said statute very fully defines what the legislature had in view by the permission granted to discontinue to use or maintain said canal or any part thereof. It is as follows:

"Sec. 4. Whenever the said company shall exercise the power and authority granted in section three of this act to discontinue to use or maintain said canal, or any part thereof, it shall, within a reasonable time thereafter, restore the highway crossings of such part of said canal as is so discontinued to their former state, so far as the same can be done, either by the removal of the bridges thereover and the approaches thereto and filling in the bed of the canal at such crossings, or in such other way as may be found most practicable for that purpose. It shall also be the duty of said company, in the event of such discontinuance of said canal, or any part thereof, to make such provision for the private crossings over that part of said canal so discontinued as will furnish those entitled thereto a suitable crossing thereover, either by the removal of the bridges and approaches now existing at and for such private crossings and filling in the bed of the canal thereat, or in such other way as may be found most practicable for that purpose. It shall also be the duty of said company, in the event of such discontinuance of said canal or any part thereof, to make such provision for the streams now discharging into said canal on that part of it which may be so discontinued as will restore them to their original channels; but where to make such restoration has become, or is now, impossible, such provision shall be made for the discharge of the water of such streams from said canal as the existing situation now permits, and as will avoid injury to other property. It shall also be the duty of said company, its successors or assigns, to take such precautions and make such provisions for the carrying away of water that may flow into the bed of such portion of said canal as may be discontinued as will prevent such stagnant pools of water therein as are liable to become injurious to public health."

It will be seen that this permission was granted to the Delaware & Hudson Canal Company, and physical discontinuance is there meant and fully provided for. Certain duties are devolved on the Delaware & Hudson Canal Company by this section as to the restoration of highway crossings, private crossings, and the disposal of the streams now discharging in the said canal, and other matters in the event of discontinuance, by which it is clearly to be seen that the legislature had in mind the actual, physical discontinuance of said canal; thus securing the rights of the public to that canal, or any parts thereof, until such physical discontinuance actually took place. This section, as does section 3, applies to the Delaware & Hudson Canal Company only as to permission to discontinue. In only the last clause of said section 4 is the word "company" (referring to the Delaware & Hudson Canal Company) followed by the words "its successors or assigns," and that is the clause providing for the proper protection to the health of the people residing along such portions of said canal bed as might be discontinued, which was a prudent precaution on the part of the legislature for the health of the people residing in such localities. It is not shown that either the Delaware & Hudson Canal Company, the Cornell Steamboat Company, or this defendant has taken such action, or in any way put itself in position to take such action, as is demanded by this section shall be taken

when the operation, use, or maintenance of the portion of the canal in question is discontinued. The canal is there, and in operation.

The defendant still insists by its answer in this action, in practically the same language as its answer in the prior action, that simply as a matter of accommodation to the plaintiff and others doing business along said canal it has expressed a willingness to transport goods manufactured or bought by them, provided said parties would compensate said cement company to some extent for its expense in the maintenance of this part of the canal; in other words, it is willing to carry on a sort of limited common carrier business, adjusting its own rates, and selecting its patrons. If this claim can be successfully maintained, it could, by high rates for cement carriage and fair rates for such other commodities as might be offered, successfully exclude the plaintiff and others in like business, and still do a business as common carrier for all others offering, although not calling it by that name. I think this property cannot be so used. The position of the parties is not materially changed from what it was on the prior action, so far as the right of the public to use this portion of the canal desired to be used by the plaintiff is concerned. If the contention of the defendant is correct, then we must hold that, so far as this portion of the canal is concerned, the mere transfer by the Delaware & Hudson Canal Company to the defendant operated to give to the grantee greater rights and powers than the grantor possessed, and freed the grantee from the obligations of the grantor. The Delaware & Hudson Canal Company could not discontinue so as to deprive the public of its rights to navigate this canal, except in the method prescribed by the statute, and yet it is by authority of the same statute that the defendant claims it has discontinued, without, as we have seen, having taken any steps to comply therewith. The authorities are uniform holding that, where corporate property affected with a public use is transferred, the franchise and the physical property are inseparable, and the grantee assumes the obligations attaching to the property, particularly to the public, so long, at least, as the property is devoted to the same use. 2 Mor. Priv. Corp. (2d Ed.) § 1122; Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684. I am of the opinion that the plaintiff is entitled to navigate the waters of said canal so long as it is maintained in its present condition, and a temporary injunction may issue as prayed for in the complaint; and, as ample security was required in the injunction granted in the former action, the amount of the undertaking required herein will be the sum of $5,000.

Ordered accordingly.