THE NEW YORK CEMENT COMPANY, Respondent, *v.* CONSOLIDATED ROSENDALE CEMENT COMPANY and Others, Appellants.

THE NEW YORK CEMENT COMPANY, Respondent, *v.* CONSOLIDATED ROSENDALE CEMENT COMPANY, Appellant.

*Delaware and Hudson canal — a purchaser of a part thereof is not bound to maintain it as a public way.*

Chapter 469 of the Laws of 1899, relating to the canal constructed by the Delaware and Hudson Canal Company under chapter 238 of the Laws of 1823, which authorized such company to "lease, sell or discontinue to use or maintain said canal, or any parts thereof, which in their judgment are no longer necessary for said purpose," did not impose upon a manufacturing corporation, which purchased a portion of the canal from a steamboat company (which had purchased the entire canal from the Delaware and Hudson Canal Company) and elected to keep the same open for the purpose of transporting thereon its

products to the Hudson river, the duty to operate and maintain such portion of the canal as a public way subject to the provisions as to toll contained in chapter 238 of the Laws of 1823.

APPEAL by the Consolidated Rosendale Cement Company and others, the defendants in the first above-entitled action, from an order of the Supreme Court, made at the Ulster Special Term, bearing date the 17th day of May, 1902, and entered in the office of the clerk of the county of Ulster, restraining the defendants during the pendency of the action from exacting from the plaintiff a greater rate of toll than four cents a ton per mile for the transportation of merchandise over the canal formerly owned by the Delaware and Hudson Canal Company.

Also an appeal by the Consolidated Rosendale Cement Company, the defendant in the second above-entitled action, from an order of the Supreme Court, made at the Ulster Special Term and entered in the office of the clerk of the county of Ulster on the 19th day of July, 1902, restraining the defendant during the pendency of the action from preventing or attempting to prevent the plaintiff from transporting its cement upon its own boats through portions of the canal formerly owned by the Delaware and Hudson Canal Company.

The Delaware and Hudson Canal Company was incorporated by act of the Legislature, viz., chapter 238 of the Laws of 1823, for the purpose of constructing and operating a canal from Honesdale, in the Pennsylvania coal regions, to Eddyville on the Hudson river. Its main purpose was to facilitate the transportation of coal from the mines to tidewater, but it also furnished transportation for all merchandise through that section, and the said act regulated the tolls which might be charged by the company for both coal and other merchandise. It was operated by such company until 1899. Under the provisions of chapter 469, Laws of 1899 (adding §§ 3–6 to Laws of 1867, chap. 841), such company, on June 24, 1899, sold and conveyed such canal to the Cornell Steamboat Company, and such latter company, on March 26, 1902, sold and conveyed the east twelve miles thereof to the defendant company in this action. The remaining part of such canal, extending westerly a distance of some ninety-eight miles to Honesdale, has been entirely abandoned. It is no longer used as a canal, but is in different portions thereof diverted to different uses.

The defendant company is a large manufacturer of hydraulic cement, having its works near the westerly end of such twelve miles so purchased by it, and it uses such canal to transport its products to the Hudson river.  The plaintiff is also a manufacturer of such cement, having its works some five miles from the river; and it had, during the time that the Delaware and Hudson Canal Company and the Cornell Company owned such canal, used it to transport its products to the river, and had paid for such transportation the rates fixed by the said act of 1823, only.  After the defendant company had acquired the twelve miles aforesaid, it claimed to own such canal as a private way and that it kept it open and in operation for its own private use only; that it was under no obligations to allow the plaintiff, or any other person, to use it or to transport their goods thereon; but it offered, for the accommodation of the plaintiff, to allow it such use and transportation if it would pay therefor at the rate of sixteen cents per barrel for the cement so transported.

The plaintiff claims that such twelve miles of canal is still a public highway; that it still has the right to run its boats thereon, and that no greater tolls can be charged therefor than are fixed by the charter aforesaid; and it brought this action to perpetually enjoin the defendants from exacting more.

The judge at Special Term granted an injunction *pendente lite* against the defendants, prohibiting them from charging any more, and from that order this appeal is taken.

In another action the plaintiff seeks to enjoin the defendant from preventing it from navigating such canal, and the same judge at Special Term has made an order prohibiting the defendant from excluding or preventing the plaintiff from navigating the same. From such order an appeal was also taken, and both appeals are here presented and argued together.

*A. T. Clearwater* and *Alfred C. Petté*, for the appellants.

*John J. Linson*, for the respondent.

PARKER, P. J.:

The orders from which these appeals are taken are based upon the theory that the defendant company is holding the twelve miles

of the canal in question under the same title and subject to the same liabilities under which the Delaware and Hudson Canal Company held the whole canal. The correctness of this theory depends upon the effect which is to be given to the act of 1899, under the authority of which the sale by such company was made.

I concede, at the outset, that up to the time of the passage of such act, the Delaware and Hudson Canal Company held such canal subject to the right of the public to navigate it under such regulations and for such tolls as were allowed by the act of 1823, and it was also under obligation to maintain such canal in proper condition for such use. Its contract with the State upon its organization under such act of 1823 was to that effect. I also concede that such company had no right to sell such canal, nor any part thereof that would interfere with its full performance of such obligations, unless authorized to do so by act of the Legislature. Such is the well-settled rule of law. I also concede that if such company had sold to the Cornell Steamboat Company by virtue of an act that merely authorized it to sell and convey its canal, even though no express permission to sell any of its franchises was included therein, the purchaser would by implication take the property and all franchises necessary to enable it to operate it as a canal, and also would be held to have assumed all the obligations which the Delaware and Hudson Canal Company owed to the State and which were connected therewith. In other words, so far as the use of the property was concerned, it would succeed to the rights which its grantor had, and assume its obligations to maintain the canal as a public way.

But the serious question in this case is, whether under the statute of 1899 any such obligation on the part of the purchaser has been provided for or can be implied.

It is to be noticed that no permission has in terms been given by that act to the Delaware and Hudson Canal Company to sell or transfer any of its franchises. If any were necessary to the use of the property by the purchaser they must have been acquired by implication. So, also, there is no direct provision that the property sold should be taken by the purchaser subject to any of the obligations which the Delaware and Hudson Canal Company had assumed towards the State concerning it. There is no expression in the act

indicating a purpose on the part of the State that, notwithstanding the sale, the public use of the canal shall remain intact. If any such obligation did follow it rests upon implication only. In my judgment no such implication exists. The provisions of the act repel it.

Section 3 begins with the suggestion that the canal is no longer useful for the purposes for which it was constructed; that the canal company can now transport coal from the Pennsylvania mines to the markets of the State more economically by its railroads than it can by the canal. Therefore it in substance enacts that whenever such company desires it may, by vote of its managers, "lease, sell or discontinue to use or maintain said canal, or any parts thereof, which in their judgment are no longer necessary for said purpose." The purposes alluded to are the transportation of coal from the mines to the river. Here is a distinct permission to cease to *maintain* the canal — that is, to abandon it as a public way. If the company need no longer maintain the canal, if they may cease to use it as such, then the obligation which it assumed in its charter to operate and maintain it as a public way is discharged. The company being released from that obligation, it is no longer impressed upon the property.

So, also, the permission to sell indicates the same purpose on the part of the State. It authorizes the company to sell in parcels. This provision alone repels the idea that the purchaser was to take the property burdened with the obligation to maintain it as a public way. Surely it cannot be supposed that the canal was to be held and operated as a public way from Honesdale to the river by the united action of as many different purchasers as the Delaware and Hudson Canal Company might succeed in finding. It seems absurd to suppose that any purchaser could be found for a part of the canal, if he were compelled to assume all the duties that the Delaware and Hudson Canal Company were obligated to perform concerning it. But, moreover, such "*parts*" as the company were authorized to sell were those which in the judgment of its managers were no longer necessary for its purposes. Is it to be supposed that the Legislature intended that the purchaser of *such a part* should be bound to keep it open as a public way? And that all *such* pur-

chasers must unite to keep the whole line of 110 miles in operation and open to the public use? Were the purchasers obliged to operate as a canal those parts which the Delaware and Hudson Canal Company sold as no longer useful for that purpose? Did the State intend to demand from the purchaser duties which it had concluded ought no longer to be exacted from the Delaware and Hudson Canal Company?

It seems to me that the plain and only purpose of the statute was to release and discharge the Delaware and Hudson Canal Company from its liability to operate and maintain the canal as a public way, and allow it to sell or dispose of the same, or any parts thereof, as its managers might desire. The implication claimed by the respondent does not arise in this case, because, the grantor having been discharged of its obligation, the grantee took the property freed from the same.

Acting under this statute, the Delaware and Hudson Canal Company sold the whole canal to the Cornell Steamboat Company. That was in effect an abandonment of it as a public way. It is urged that because it included "*the franchises*" in the conveyance it cannot be deemed such an abandonment. It is clear that neither party to the conveyance understood that thereafter it was a public way, because the grantee expressly covenants to perform all the obligations required of the Delaware and Hudson Canal Company by section 4 of the act when the canal shall cease to be used as such. Evidently the Cornell Steamboat Company understood that it was purchasing the private property of the Delaware and Hudson Canal Company, and that when purchased it became its own private property freed from any of the burdens imposed by its charter upon the Delaware and Hudson Canal Company. Acting upon this understanding, it subsequently sold the canal in several different parcels to as many different owners. In all parts, as I understand the record, except the twelve miles in question, its use as a waterway has been abandoned. It has been filled up and destroyed. As to such twelve miles the defending company evidently purchased it for its own private use. It needed it as a means of transporting its cement to the Hudson river. Rather than have it destroyed, it purchased it, and at its own expense maintains it as a private way. It seems clear that such action on the part of the

Delaware and Hudson Canal Company and its grantee was a complete abandonment of the canal under the statute. It had ceased to be a public way when the defendant company purchased it. Evidently their purchase was made because it had ceased to be such and because the rights of the public, secured by the charter of the Delaware and Hudson Canal Company, had been surrendered by the act of 1899.

It is urged that this construction of the statute enables the Delaware and Hudson Canal Company, through the pretense of a sale to a purchaser in its own interest, to operate the canal freed from the obligations imposed by its charter. Even if it could so evade its chartered obligations the imposition by it of excessive tolls would be no more burdensome upon the public than the utter destruction of the canal would be. It is not disputed that the State had the power to permit the Delaware and Hudson Canal Company to utterly destroy the canal, and I, therefore, assume that it had such authority, and if it had such power I see no reason why it might not enact that thereafter such company might hold and operate the canal as its own private property.

But such is not the question presented by these appeals. To maintain these injunctions the plaintiff must establish the *liability* of the defendants to operate this twelve miles of the canal as a public way, subject to the provisions as to tolls contained in the charter to the Delaware and Hudson Canal Company. By what sort of a title the Delaware and Hudson Canal Company would hold the property constituting its canal, after the act of 1899 had discharged it from its obligations to the public concerning it, or to what uses it might thereafter put it, or what sort of rights in that respect its grantee might take, or did take, we are not called upon to determine beyond the question whether either *must* thereafter maintain and operate it under the obligations imposed by such company's charter.

If this defendant company took the twelve miles of canal burdened with obligations imposed as to it by the charter of the Delaware and Hudson Canal Company, then it must not only operate it for the tolls fixed by such charter, but also for so long a time as the charter requires; because the obligation to keep it open for public use is as imperative as that concerning the tolls to be charged.

That such burden followed the property or any portion thereof, after a sale by the Delaware and Hudson Canal Company, I do not believe, and, therefore, I am of the opinion that neither the public nor this plaintiff has any right to navigate the same.

The question presented is not whether the defendant may use it as a private canal, or as a public canal upon its own terms, but whether, having become the owner of the lands and waters constituting the canal, it must maintain and operate it as a public way. Being of the opinion that no such burden was impressed upon the property when it acquired the same, I must hold that the orders be reversed and the injunctions be vacated.

All concurred.

Order reversed, with ten dollars costs and disbursements in each action.