THE NEW YORK CEMENT COMPANY, Appellant, *v.* CONSOLIDATED ROSENDALE CEMENT COMPANY et al., Respondents.

SAME, Appellant, *v.* CONSOLIDATED ROSENDALE CEMENT COMPANY, Respondent.

1. DELAWARE AND HUDSON CANAL — PART THEREOF PURCHASED AND USED BY MANUFACTURING CORPORATION FOR TRANSPORTATION PURPOSES STILL A PUBLIC HIGHWAY AND SUBJECT TO RESTRICTIONS IMPOSED ON CANAL COMPANY BY ITS CHARTER (L. 1823, CH. 238). Where the Delaware and Hudson Canal Company, acting under the statute (L. 1899, ch. 469) authorizing it to lease, sell or discontinue its canal, conveys to a domestic steamboat company the entire canal and its appurtenances and "all the franchises owned, possessed, used or enjoyed by the grantor in connection with the ownership, use and operation of said canal," and the

steamboat company, after operating the canal for about three years in the same manner as its predecessor, charging only the tolls provided by the act under which the canal company was organized (L. 1823, ch. 238), conveyed the east twelve miles of the canal to the Consolidated Rosendale Cement Company, a domestic manufacturing corporation, by a deed similar to the one it had received, and in which it reserved to itself, its successors and assigns, and to a certain person named, his heirs, legal representatives or assigns, the right at all times, so long as said canal is operated, to pass boats through the canal, whether light or loaded, without paying toll or charges of any kind therefor, the entire canal, except said twelve miles, having been abandoned, and the cement company having since continued to use said twelve miles of canal for transportation purposes for itself and such other parties as it saw fit to permit, the said twelve miles is not private property, but a public highway, and so long as it is used for the purpose of transportation must be regarded as a public highway to be operated under all the restrictions and liabilities imposed upon the Delaware and Hudson Canal Company by the act of 1823.

2. Same — Equity — When Action to Restrain Purchaser of Canal from Collecting Illegal Tolls and Excluding Freight and Boats of Rival Company from Canal Can Be Maintained. A cement company which, long before the sale of the east twelve miles of the canal to the Consolidated Rosendale Cement Company, had erected expensive cement works upon the bank of that part of the canal, relying upon the assumption that its product could be conveyed to tidewater at rates fixed by the charter of the canal company, can maintain an action in equity against the Consolidated Rosendale Cement Company restraining it from imposing illegal tolls and excluding the plaintiff's boats and freight from the canal, although the use of the canal, as provided by the charter of the canal company, is common to the public, since by the imposition of illegal and prohibitive tolls and the exclusion of plaintiff's freight and boats from the canal, the plaintiff is subjected to special damages peculiar and personal to itself, in which the public have no interest.

3. Same — Exercise of Charter Rights of Delaware and Hudson Canal Company by Purchaser of Canal — When Latter Cannot Claim that Exercise Thereof Would Be Ultra Vires. Whether the exercise by the Consolidated Rosendale Cement Company of the franchises granted by the state would be *ultra vires*, is a question between that company and the state of New York, with which the company has no concern and which it is estopped from raising by voluntarily assuming the position that the canal is its private property, kept open and in operation only for its private use.

4. Trial — Decision in Long or Short Form — When It Cannot Be Made in Case Tried Before a Jury. Where a case was regularly brought to trial before a jury and after the introduction of certain docu-

mentary evidence by plaintiff, an agreed statement of facts was received in evidence and spread upon the record in full, whereupon the plaintiff rested, and the defendant without offering any evidence moved to dismiss the complaint on the ground that facts had not been proved sufficient to constitute a cause of action, which motion was granted and judgment entered in accordance therewith, there can be no decision, with the facts stipulated, in either the long or short form, and consequently no presumption of facts found in favor of the successful party.

*N. Y. Cement Co.* v. *Consolidated Rosendale Cement Co.*, 84 App. Div. 635, reversed.

*N. Y. Cement Co.* v. *Consolidated Rosendale Cement Co. et al.*, 84 App. Div. 635, reversed.

(Argued March 3, 1904; decided April 5, 1904.)

APPEALS from judgments of the Appellate Division of the Supreme Court in the third judicial department, entered June 8, 1903, affirming judgments in favor of defendants entered upon dismissals of the complaints by the court at a Trial Term.

The nature of the actions and the facts, so far as material, are stated in the opinion.

*John J. Linson* for appellant. The canal in question is a public highway. (*Selden* v. *D. & H. C. Co.*, 29 N. Y. 634; *L. S. & M. S. R. R. Co.* v. *U. S.*, 93 U. S. 442; *G. B. Co.* v. *Smith*, 128 U. S. 174; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 45; *People* v. *N. Y., L. E. & W. R. R. Co.*, 22 Hun, 533; *Sanford* v. *C. R. R. Co.*, 24 Penn. St. 378; *Shipper* v. *P. R. R. Co.*, 47 Penn. St. 338; *P. C. Co.* v. *D. & H. C. Co.*, 1 Keyes, 78; 3 Abb. Ct. App. Dec. 475; *Matter of Townsend*, 39 N. Y. 171; *Perrine* v. *C. & D. C. Co.*, 9 How. [U. S.] 184.) It did not lose its public character by reason of the enactment of chapter 469 of the Laws of 1899, nor by anything that has been done thereunder. (*N. O., etc., R. R. Co.* v. *Delamore*, 114 U. S. 501; *Branch* v. *Jessup*, 106 U. S. 478; Morawetz on Corp. [2d ed.] § 932; *Clow* v. *Van Loan*, 4 Hun, 184; *Pierce* v. *M. & C. R. R. Co.*, 24 Wis. 551; *Coe* v. *C. P. & I. R. R. Co.*, 10 Ohio St. 372; *E. B. F. R. R. Co.* v. *E. R. R. Co.*, 13 Allen, 422; *Richards* v. *M., etc., R. R. Co.*, 44 N. H. 127; *B. & L. R. R. Co.* v. *Metcalfe*,

4 Metc. [Ky.] 199 ; *Randolph* v. *W. R. R. Co.*, 11 Phila. 502 ; *Pillard* v. *Maddox*, 28 Ala. 321.) Defendant cannot justify its exclusion of plaintiff from a public highway, or its exaction of unreasonable and illegal tolls by the plea of *ultra vires.* (*H. & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252 ; *R. L. R. Co.* v. *Roach*, 97 N. Y. 378 ; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62 ; *A. S. Bank* v. *Savery*, 82 N. Y. 291 ; *Bissell* v. *M. S. & N. T. R. Co.*, 22 N. Y. 262 ; *Parish* v. *Wheeler*, 22 N. Y. 502 ; *R. Co.* v. *McCarthy*, 96 U. S. 267 ; *Nat. Bank* v. *Graham*, 100 U. S. 699, 702 ; *B. & P. R. R. Co.* v. *Baptist Church*, 108 U. S. 317, 320 ; *N. Y. & H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30.) Plaintiff cannot lawfully be excluded from such public highway. (*Davis* v. *Mayor*, 14 N. Y. 515 ; *Craig* v. *R. C. & B. R. R. Co.*, 39 N. Y. 411 ; *Beekman* v. *S. & S. R. R.*, 3 Paige, 45 ; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9 ; *Com.* v. *Wilkinson*, 16 Pick. 175 ; *Parks* v. *Boston*, 8 Pick. 218 ; *Peck* v. *Smith*, 1 Conn. 103 ; *Barnett* v. *Johnson*, 15 N. J. Eq. 481 ; *C. R. Bridge* v. *W. Bridge*, 11 Pet. 420 ; *Wood* v. *T. T. Co.*, 24 Cal. 474.) Neither can plaintiff be compelled to pay an unreasonable sum as toll ; and in this case the test of reasonableness is the maximum charge allowed by the act of 1823. (*People* v. *Budd*, 117 N. Y. 16 ; *Munn* v. *Illinois*, 94 U. S. 125 ; *McEntee* v. *K. W. Co.*, 165 N. Y. 31, 32 ; *Messenger* v. *P. R. R. Co.*, 36 N. J. 407 ; *Coy* v. *I. G. Co.*, 146 Ind. 655 ; *Griffin* v. *G. W. Co.*, 41 L. R. A. 240 ; *Friedman* v. *G. & S. Tel. Co.*, 32 Hun, 4 ; *People* v. *M. G. L. Co.*, 45 Barb. 136 ; *Lombard* v. *Sterns*, 4 Cush. 60 ; *People* v. *King*, 110 N. Y. 428.) As such exclusion and such unreasonable and illegal tolls cause special and peculiar injury to plaintiff, and as sufficient grounds for the interference of equity exist, a case is made for the application of the remedy by injunction. (Morawetz on Corp. § 1042 ; *Thompson* v. *N. Y. & H. R. R. Co.*, 3 Sandf. Ch. 625 ; *Ogden* v. *Gibbons*, 4 Johns. Ch. 150 ; *Bridge Co.* v. *Ry. Co.*, 39 Barb. 212 ; *Lansing* v. *Smith*, 8 Cow. 146 ; 4 Wend. 25 ; *Mills* v. *Hall*, 9 Wend. 315 ; *Myers* v. *Malcolm*, 6 Hill, 292 ; *Church* v.

*R. R. Co.*, 5 Barb. 83; *Olmstead* v. *Loomis*, 9 N. Y. 423; *Corning* v. *T. I. & N. Factory*, 40 N. Y. 191; *W. P. I. Co.* v. *Reymert*, 45 N. Y. 703; *Mudge* v. *Salisbury*, 110 N. Y. 413.)

*A. T. Clearwater* and *Alfred C. Petté* for respondents. The structure over which the plaintiff claims the right of transportation is not a public highway, but by the abandonment thereof as a canal, by the Delaware and Hudson Canal Company, pursuant to the provisions of chapter 469 of the Laws of 1899, became private property, from the use of which the public might be prohibited altogether, or for its use such compensation charged as the owner might see fit. (*People ex rel.* v. *Lacombe*, 99 N. Y. 43; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *K. Ice Co.* v. *Schultz*, 116 N. Y. 382; *De Witt* v. *E. T. R. R. Co.*, 134 N. Y. 495; *Dailey* v. *W. N. Y. & P. Ry. Co.*, 53 App. Div. 551; *Lynch* v. *Partridge*, 36 Misc. Rep. 302; *Fox* v. *Cincinnati*, 104 U. S. 783; *Walsh* v. *C. H. V. & A. R. R. Co.*, 176 U. S. 469; *De Camp* v. *Thompson*, 16 App. Div. 528; *Wadsworth* v. *Smith*, 11 Maine, 278; *Harvey* v. *Potter*, 19 La. Ann. 264.) The injury complained of is not special to the plaintiff. (*B. M. C. Co.* v. *L. C. & N. Co.*, 50 Penn. St. 91; *K. I. Co.* v. *Schultz*, 116 N. Y. 382; *Lansing* v. *Smith*, 8 Cow. 146; *Carvalho* v. *B. & J. B. T. Co.*, 56 App. Div. 522; *McNulty* v. *B. H. Ry. Co.*, 31 Misc. Rep. 674; *B. M. C. Co.* v. *L. C. N. Co.*, 50 Penn. St. 91; *Saylor* v. *P. C. Co.*, 183 Penn. St. 167.)

BARTLETT, J. Action No. 1 seeks to prevent the collection of illegal canal tolls, and action No. 2 to restrain defendant from excluding plaintiff's boats and freight from the canal in question. These actions were tried and argued together on one set of briefs, although there are two records.

No opinions were written below after the trial of the actions, but two were handed down at Special Term and one in the Appellate Division on motions for injunctions *pendente*

*lite.* (37 Misc. Rep. 746; 38 Misc. Rep. 518; 76 App. Div. 285.)

The question presented by these appeals is an exceedingly narrow one when the facts, as settled by agreement, are carefully considered. The Delaware and Hudson Canal Company, by grant of the legislature of this state (Laws 1823, chap. 238), constructed a canal between the Delaware and Hudson rivers, a distance of about one hundred and ten miles, and operated the same for over seventy years as a common carrier of coal and other freight, charging tolls fixed by the act of 1823.

This court held, when a subsequent enlargement of the canal was in progress, that the Delaware and Hudson Canal Company possessed the power under its charter to exercise the right of eminent domain. It was also held that the canal "though not strictly a public work, is yet of the nature of one, as much as a railroad, and is to be regarded as a public work in the same sense." (*Selden* v. *D. & H. C. Co.*, 29 N. Y. 634, 638, 641, 642.)

In 1899 the legislature amended the act of 1823 (Laws of 1899, chap. 469) in important particulars by inserting therein certain new sections. We are concerned with sections three and four. Section three reads as follows : " Whenever it shall appear to the managers of said canal company that it is able to fulfill the aforesaid purpose of opening and of mining and bringing to market a supply of stone coal which is found in the interior of the state of Pennsylvania more economically by rail over its own or other lines than by its canal, it shall be lawful for said company, and it is hereby authorized and empowered by vote of said managers, to lease, sell or discontinue to use or maintain said canal, or any parts thereof, which in their judgment are no longer necessary for said purpose."

The managers of the canal company were thus authorized to do one of three things at their election, viz., lease, sell or discontinue to use or maintain said canal, or any parts thereof.

On the 24th day of June, 1899, the Delaware and Hudson

Canal Company conveyed to the Cornell Steamboat Company, a domestic corporation, the entire canal and its appurtenances, and "all the franchises owned, possessed, used or enjoyed by the grantor in connection with the ownership, use and operation of said canal." The Cornell Steamboat Company continued to operate said canal in the same manner as its predecessor, charging only the tolls provided by the act of 1823 until about the 20th of March, 1902, when it conveyed, by deed similar to the one it had received, the east twelve miles of said canal, beginning at the tide lock at Eddyville, in the town of Ulster, county of Ulster, and ending at the easterly line of the town of Marbletown, in said county.

It is conceded that at the time of this conveyance to the defendant the remaining part of the canal, extending westerly about ninety-eight miles to Honesdale, in Pennsylvania, had been entirely abandoned.

The plaintiff and defendant are large manufacturers of hydraulic cement, their works being on the line of said twelve miles of canal; the defendant's is located near the westerly end thereof and the plaintiff's is about five miles from the Hudson river.

The plaintiff corporation transported its cement by this canal to tidewater for many years and until shortly after the conveyance to the defendant corporation by the Cornell Steamboat Company on or about March 26th, 1902, paying only the tolls provided by the act of 1823, being a fraction less than four cents per barrel.

The Cornell Steamboat Company, in conveying to the defendant corporation, reserved to itself, its successors and assigns and to a certain person named, his heirs, legal representatives or assigns, the right at all times, so long as said canal is operated, to pass canal boats through the canal, whether light or loaded with sand, stone or cement slag, without paying toll or charges of any kind therefor.

It appears in the agreed statement of facts that after the defendant company had acquired the twelve miles of canal aforesaid, it *claimed* to own that portion of the canal as a pri-

vate waterway, and that it kept it open and in operation for its own private use only; that it was under no obligation to allow the plaintiff or any other person to use it and to transport their goods thereon, but it offered, for the accommodation of the plaintiff, to allow it such use and transportation if it would pay therefor at the rate of sixteen cents per barrel for the cement so transported, and it *claimed* that unless the plaintiff would pay the sum asked by the defendant company it could be excluded from the canal. Thereupon the plaintiff, after making tender of the legal rates of toll, began the two actions to which reference has already been made, insisting that the tolls were prohibitory.

It is to be observed that in this agreed statement of the facts it is not *admitted* by the plaintiff that this canal is a private waterway, and that it is kept open and in operation only for the private use of the defendant company. The statement is that this situation is *claimed* by the defendant company, and the one important question presented by this appeal is whether this remaining twelve miles of canal has been in law abandoned and discontinued. There was no effort made to prove at the trial that this portion of the canal had been abandoned in conformity to the provisions of section four of the act of 1899.

The provisions of this section are most significant and disclose what the legislature had in mind when it provided for the discontinuance of the canal, or any parts thereof. Section four reads as follows: "Whenever the said company shall exercise the power and authority granted in section three of this act to discontinue to use or maintain said canal, or any part thereof, it shall, within a reasonable time thereafter, restore the highway crossings of such part of said canal as is so discontinued to their former state, so far as the same can be done, either by the removal of the bridges thereover and the approaches thereto and filling in the bed of the canal at such crossings, or in such other way as may be found most practicable for that purpose. It shall also be the duty of said company, in the event of such discontinuance of said canal, or

any part thereof, to make such provision for the private cross-
ings over that part of said canal so discontinued as will fur-
nish those entitled thereto a suitable crossing thereover, either
by the removal of the bridges and approaches now existing at
and for such private crossings and filling in the bed of the
canal thereat, or in such other way as may be found most
practicable for that purpose.   It shall also be the duty of said
company, in the event of such discontinuance of said canal or
any part thereof, to make such provision for the streams now
discharging into said canal on that part of it which may be so
discontinued as will restore them to their original channels;
but where to make such restoration has become, or is now,
impossible, such provision shall be made for the discharge of
the water of such streams from said canal as the existing
situation now permits, and as will avoid injury to other prop-
erty.   It shall also be the duty of said company, *its successors
or assigns,* to take such precautions and make such provision
for the carrying away of water that may flow into the bed of
such portion of said canal as may be discontinued as will
prevent such stagnant pools of water therein as are liable to
become injurious to public health." .

This section clearly contemplates that the water is to be
removed from the canal; that the highways which had been
carried over it by bridges of sufficient height to permit large
boats to pass underneath would be lowered to their former
position before the canal was constructed, either by the
removal of the canal bridges and the filling in of the bed of
the canal, or in some other practicable way.   The same
provision is made for private crossings.

The provisions as to the treatment of streams discharging
into the canal, and the stagnant pools of water therein, all
show that the legislature contemplated a complete discontinu-
ance and abandonment of the prism for transportation
purposes.

The situation disclosed by this record is (1) we have the
Cornell Steamboat Company, the grantor of the defendant,
reserving the right of its boats to navigate the canal light or

ladened without the payment of tolls; (2) we have the defendant offering the plaintiff to transport its product if the latter consents to pay sixteen cents per barrel instead of four cents; (3) in the absence of proof we are permitted to assume that this twelve miles of canal stands precisely as it has existed for years. There was no abandonment up to the time of the trial.

The question is not involved in this case whether the defendant may, in the future at its option, discontinue this canal by actually doing so and complying with the provisions of section four of the act of 1899. The real question is whether the defendant, the successor in interest of the Delaware and Hudson Canal Company in the ownership of this waterway, which has been held by this court to be a public highway, can, so long as it exists and is used for the purposes of the defendant and such third parties as it sees fit to permit, be successfully claimed to be private property.

We are of the opinion that it must be held as matter of law, under the conditions disclosed by this record, that this twelve miles of canal is a public highway and operated under the restrictions of the act of 1823; and that if the defendant transports the product of the plaintiff to tidewater it must confine itself to the tolls provided for in the act of 1823.

If the position which has been assumed by the defendant company can be maintained, it has the liberty to use this canal as private property and charge the general public along its route, desirous of sending freight to tidewater, such rates as it sees fit. There is but one way for defendant to rid itself of the public burden imposed by this use and that is to abandon it under the provisions of the act of 1899.

We are of opinion that so long as this canal is used for the purpose of transportation, it must be regarded as a public highway, and the defendant rests under all the restrictions and liabilities imposed upon the Delaware and Hudson Canal Company originally.

The defendant comes within the principle decided by the Supreme Court of the United States in *Munn* v. *Illinois* (94

U. S. 113, 125, 130). Mr. Justice Waite, referring to the police powers, says (p. 125): "Under these powers the government regulates its citizen, one toward the other and the manner in which each shall use his own property when such regulation becomes necessary for the public good. In their exercise it has been customary in England from time immemorial, and in this country from its first colonization, to regulate ferries, common carriers, etc., and in so doing to fix a maximum charge to be made for services rendered, for accommodations furnished and articles sold." The learned judge further states (p. 130): " Common carriers exercise a sort of public office and have duties to perform in which the public is interested. (*New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S. 382.) Their business is, therefore, 'effected with the public interest' within the meaning of the doctrine which Lord Hale has so forcibly stated."

We have already pointed out that this court held in regard to the canal that while it is not strictly a public work, yet it is in the nature of one, as much as a railroad, and is to be regarded a public work in the same sense. (*Selden* v. *D. & H. C. Co.*, 29 N. Y. 634, 638, 641, 642.)

The precise point decided in the *Munn Case* (*supra*) was that when the owner of property devotes it to a use in which the public has an interest, he in effect grants to the public an interest in such use, and must to the extent of that interest submit to be controlled by the public for the common good as long as he maintains the use. He may withdraw his grant by discontinuing the use. (See, also, *People* v. *O' Brien*, 111 N. Y. 1; *Gue* v. *Tidewater Canal Co.*, 24 How. [U. S.] 257; *MacEntee* v. *Kingston Water Co.*, 165 N. Y. 27.)

The defendant raises the point that a bill in equity praying for a perpetual injunction restraining the defendant from imposing illegal tolls and excluding the plaintiff's boats and freight from the canal, is not the proper remedy. The remedy suggested is mandamus, but we are of opinion that under the facts it was competent for the plaintiff to seek the restraining power of a court of equity to prevent the exaction of illegal

12

tolls and exclusion from a public highway.    An action can be maintained, although the matter is one of common right, where damage peculiar and personal to plaintiff is shown.

In discussing the general question whether the restraining powers of a court of equity will be exercised in favor of the plaintiff corporation in the case at bar, we are to keep in mind the precise situation.    This is not the case where the general rights of the public alone are involved and the plaintiff received only such injury as is common to other citizens interested in the maintaining of this canal.    We have here a state of facts that shows the plaintiff to have been specially damaged.    This canal had been in operation for a period of nearly seventy years when sold to the Cornell Steamboat Company.    Before that sale the plaintiff had erected expensive cement works on the banks of the canal five miles from tidewater where the canal locks its boats into the Hudson river at Rondout.    This expenditure of money we are bound to infer from these facts was made in view of the existence of the canal, and the further fact that the rate of tolls was fixed by the charter of the canal company under the laws of Pennsylvania and New York.    In other words, the plaintiff company proceeded upon the assumption that its product could be conveyed to tidewater at rates fixed by law that would enable it to compete with other cement companies contending for the market.

Mr. Morawetz in his work on Corporations, second edition, § 1042, says: "It is well settled that a court of chancery has jurisdiction to grant equitable relief against a corporation at the suit of an individual whenever a sufficient cause for the relief is shown upon the ordinary principles of equity jurisprudence; and the fact that the act of the corporation against which relief is sought involves an unauthorized exercise of corporate powers, *or other breach of the law,* is wholly immaterial under the circumstances."

In the case of *Delaware & Raritan Canal Co.* v. *Camden & Atlantic R. R. Co.* (16 N. J. Equity, 321) it was held that where, by the act of the legislature, the plaintiff companies

were fully and effectually protected until a certain date from railroad competition between the cities of New York and Philadelphia, an injunction was the proper remedy to secure to the plaintiffs the enjoyment of a statutory privilege.

In *Rowe* v. *Granite Bridge Corporation* (21 Pick. [38 Mass.] 344), it was held that although indictment is the proper remedy in the case of a public nuisance where it is absolutely necessary that such a nuisance should be immediately suppressed, a court of chancery may interfere by injunction until the slower process of indictment can be put in motion. This case discloses the dual remedy and illustrates the legal principle that equity will lay hold of a corporation to enforce not only public but private rights.

We have been cited in support of the proposition that equity will not interfere in such a situation as is now presented to the case of *Knickerbocker Ice Co.* v. *Shultz* (116 N. Y. 382, 389). This case involves the construction of a dike on the Hudson river shore that rested upon land under water, the title to which was still in the state. The plaintiff had for many years before the construction of the dike been accustomed to cutting ice in the Hudson river and drawing it over the premises in question to the shore. The dike interfered with this mode of harvesting ice, and the plaintiff thereupon brought an action to restrain the defendant from erecting or maintaining it. The court held that this was a purpresture, that is, an invasion of the right of property in the soil while the title to the same remained in the People. A nuisance in such a case as this is an injury to the common right of the public in navigating the river, and these questions can only be tested in an action at the suit of the People.

It will be observed that in this case the plaintiff had no absolute vested property right which it was seeking to protect, but invoked a remedy which, under the conditions disclosed, rested in the People and could only be invoked by the attorney-general.

Two other cases have been cited to us in this connection, viz., *Lansing* v. *Smith* (8 Cowen, 146; *S. C.* on appeal, 4

Wend. 25); also case of *Buck Mountain Coal Co.* v. *L. C. & N. Co.* (50 Penn. St. 91).

In 8 Cowen it was held that in the case of erections working a common injury to the owner of docks, etc., and unauthorized by statute, no action would lie at the suit of an individual unless there was some injury from the erection peculiar and personal to him.

In 50 Penn. St. it was held that a bill in equity to enforce the performance of public duties by corporations could not be maintained by a private party in the absence of special right or authority.

In *Milhau* v. *Sharp* (27 N. Y. 628) this court said : "To entitle a party to relief by injunction who is sustaining or about to sustain a peculiar injury from a public nuisance, it is also necessary that the injury should be such as cannot be well or adequately compensated in damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which cannot be otherwise prevented but by injunction."

The principle which we are now considering is applied not only in cases of public nuisance, but to those involving similar situations to the one at bar. (See, also, *Mudge* v. *Salisbury*, 110 N. Y. 413 ; *West Point Iron Co.* v. *Reymert*, 45 N. Y. 703 ; *Corning* v. *Troy I. & N. Co.*, 40 N. Y. 191 ; *Mills* v. *Hall*, 9 Wend. 315 ; *Ogden* v. *Gibbons*, 4 Johns. Ch. 150 ; *Covington Stock-Yards Co.* v. *Keith*, 139 U. S. 128 ; *Butchers' and Drovers' Stock-Yards* v. *L. & N. R. Co.*, 67 Fed. Rept. 35.)

In 139 U. S. (*supra*) a bill in equity was filed against a Kentucky railroad company to foreclose a mortgage and to appoint a receiver. After the appointment of the receiver a petition was filed in the foreclosure proceeding requiring the receiver to show cause why he should not deliver to the plaintiff live stock consigned to him at some suitable place outside of the yards of the company. The Supreme Court of the United States held that a railroad company holding itself out as a carrier of live stock is under a legal obligation, arising out

of the nature of its employment, to provide suitable and necessary means and facilities for receiving live stock that may be offered for shipment over its road and connections as well as for discharging said stock after it reaches the place to which it is consigned.    A final decree issued compelling the company to provide such facilities.

The defendant raises the further point that the exercise by the Consolidated Rosendale Cement Company of the franchise granted by the state to the Delaware and Hudson Canal Company would be *ultra vires*.    This is a question between the defendant and the state of New York, with which the former has no concern, as it is estopped from raising it by voluntarily assuming the position which it now occupies.    So long as the state of New York raises no objection in the premises the defendant will not be heard to complain.

A new point has been raised in this court which seems to have escaped the vigilance of counsel, as their briefs are silent concerning it.    It is urged that we have, in each of the cases that have been argued together, a situation which is absolutely fatal to the plaintiff's appeal, as the decision of the learned trial court is in the short form and the judgment in favor of the defendant was unanimously affirmed ; that in such a situation the decision of the trial court has the same effect as the verdict of a jury, and all the facts must be deemed to have been found in favor of the successful party.

In each of the cases, so far as the proceedings at the trial are concerned, a similar situation is disclosed by the record, which includes the clerk's minutes, as follows : The cases were duly called for trial in the city of Kingston, Ulster county, and it was agreed that they should be tried together.    A jury was duly impaneled and the counsel for the plaintiff, after opening his case, introduced in evidence an agreement between the Delaware and Hudson Canal Company and the Cornell Steamboat Company, also a deed of the Cornell Steamboat Company to the Consolidated Rosendale Cement Company.    It was then agreed between counsel that certain undisputed facts were involved in the actions, which were spread upon the rec-

ord in full and duly appear in the cases now before us on this appeal. Thereupon the plaintiff rested, and counsel for defendant, without offering any evidence, moved in each case to dismiss the complaint on the ground that facts had not been proved sufficient to constitute a cause of action. The motion in each case was granted and plaintiff duly excepted.

There could be no decision in a jury case, with the facts stipulated, in the short or long form, and, consequently, no presumption of facts found in favor of the successful party.

The judgments appealed from should be reversed and new trials granted in each case, with costs to abide the event.

O'Brien, J. (dissenting). The parties to this action, plaintiff and defendant, are manufacturing corporations organized and existing under the laws of this state providing for the creation of corporations of that character. Both are engaged in the same business, that is, the manufacture and sale of cement. The plaintiff's plant is located in the same county as that of the defendant and both corporations are competitors in business. The purpose of this action was to compel the defendant to carry the products of the plaintiff, its competitor, to market through a canal or waterway which the defendant insists is its private property and an adjunct to its business. The contention that the defendant is bound by law to furnish facilities for the transportation of the plaintiff's products to market and thus to aid its competitor in the transaction of its business cannot fail to arrest attention and to invite an inquiry with respect to the grounds upon which the plaintiff's claim rests.

By chapter 238 of the Laws of 1823, the Delaware & Hudson Canal Company was incorporated for the purposes described in the preamble to the statute, the first clause of which is as follows: "*Whereas*, it is desired that a channel should be opened through which the City of New York and other cities of this state may receive a supply of stone coal which is found in the interior of the State of Pennsylvania." The statute, among other things, prescribed the maximum

rate of toll which the corporation should be entitled to charge for merchandise transported in water craft over or through the canal at four cents per mile for every ton of such products as are produced by the parties to this action. It was also enacted that if the corporation should neglect or refuse to keep in repair and good order any dam, lock or sluice of their own construction, or should neglect to remove any obstacle which might occur, so that boats, rafts or other vessels might safely use the navigation of the canal in the manner provided by the act, the corporation shall for every such offense forfeit and pay the sum of one hundred dollars, to be sued for and recovered in any court of competent jurisdiction, one-half to the use of the informer and the other half to the use of the poor of the township or county where the neglect may occur, and the service of process upon the toll gatherer, in the proper county, and next to the place where the offense shall have been committed, shall be held as good and as available in law as if served on the president of the said corporation.

The corporate body thus created constructed a canal or public waterway, in compliance with the provisions of the statute, from Honesdale, in the state of Pennsylvania, to tide-water at Eddyville, on the Rondout creek, a tributary of the Hudson river. This waterway furnished transportation for all merchandise through that section until the year 1899. The length of the canal was about one hundred and ten miles. By chapter 469 of the Laws of 1899 the original act of incorporation was amended and the third section of the amendatory act reads as follows : " Whenever it shall appear to the managers of said canal company that it is able to fulfill the aforesaid purpose of opening and of mining and bringing to market a supply of stone coal which is found in the interior of the state of Pennsylvania more economically by rail over its own or other lines than by its canal, it shall be lawful for said company, and it is hereby authorized and empowered by vote of said managers, to lease, sell or discontinue to use or maintain said canal, or any parts thereof, which in their

judgment are no longer necessary for said purpose." And it was further provided in the next section that when the company should exercise the power granted in the preceding section, to discontinue to use or maintain the canal, or any part thereof, it should within a reasonable time thereafter restore the highway crossings of said canal as are so discontinued to their former state so far as the same can be done; and in case that the canal or any part thereof shall be discontinued, it was bound to make provision for the private crossings over the same. It is found that the canal company on the 24th of June, 1899, sold and conveyed the canal to the Cornell Steamboat Company, which continued to occupy the canal in the same manner and charging the same tolls as theretofore until the 26th of March, 1902, except that it did not carry the coal of the Delaware and Hudson Canal Company. The steamboat company, on the 26th day of March, 1902, sold and conveyed the east twelve miles thereof to the defendant in this case. The remaining part of the canal, extending westerly about ninety-eight miles to Honesdale, in the state of Pennsylvania, has been entirely abandoned. It is no longer used as a canal, but is in different portions thereof diverted and devoted to different uses. The defendant is a large manufacturer of cement, having its works near the westerly end of the twelve miles of the canal purchased by it and it uses the twelve miles to transport its products to market. The plaintiff is also a manufacturer of cement, having its works about five miles from the river, where it was located during the time that the canal company and the steamboat company owned the canal, and during that time used it to transport its products to the river, and had paid for such transportation to both corporations the rates fixed by the act of 1823. After the defendant had acquired the twelve miles aforesaid, it claimed to own that portion of the canal as a private highway, and that it be kept open and in operation for its own private use only. It asserts that it was under no obligation to allow the plaintiff or any other person to use it or transport goods thereon, but it offered, for the accommodation of the plaintiff, to allow it

such use and transportation if it were paid therefor at the rate of sixteen cents per barrel for the cement so transported, and it claimed that unless the plaintiff would pay the sum so demanded it should be excluded from the canal.

The plaintiff's complaint was dismissed at the trial and the judgment has been unanimously affirmed below. There is no finding in the case as to whether the sum demanded by the defendant from the plaintiff for the use of its waterway was unreasonable or otherwise; and the contention of the plaintiff is that it is now entitled to use the twelve miles purchased by the defendant in the same way and subject only to the same tolls fixed by the original statute. I think the fair construction of the act of 1899 is that the legislature thereby intended to permit the canal to be abandoned or discontinued entirely as a public waterway, and that when so discontinued or abandoned, the powers, duties and obligations of the company or its grantees as public carriers ceased. It seems to be conceded that after the passage of the act of 1899 the canal company could at its election have discontinued the canal and filled up the prism, thereby wholly depriving the public of its use as a waterway. If the company had found it to its advantage to divide the canal into parcels one mile in length over its entire distance, then under the plaintiff's construction every part or any part of the ditch so sold must continue to be a public highway, and every owner by himself or in connection with every other owner would become a common carrier. The statute permitted the sale or discontinuance of the canal in parts and ninety-eight miles of it has certainly been abandoned and no longer used as a canal, but in the language of the findings is in different portions devoted and diverted to different uses. If the defendant's purchase had been of a single mile instead of twelve miles, the same question would arise that is now presented. Could it be reasonably asserted that it was bound to keep this one mile open for the use of the public as a canal? The circumstance that the fragment which the defendant purchased is twelve miles instead of one mile does not change the question. No duties or obligations sur-

vived after the sale to the defendant different from the duties or obligations of the numerous other parties who became purchasers of some fragments, more or less, of this original waterway. What the defendant took by its purchase was the physical property without the franchises and without assuming the duties and obligations to the public of a common carrier. It is of no consequence that the conveyance to the defendant or its grantor assumed to convey the original franchise of the canal. In the absence of special statutory authority, which does not exist in this case, neither an individual nor a corporation, such as the defendant is, can buy a franchise in the market like other property. A franchise to a corporation to exercise the powers and perform the duties of a common carrier proceeds from the state in the exercise of its sovereignty, and when the canal company that originally received the franchise abandoned it under the authority of the statute, the defendant did not succeed to its powers any more than did the other numerous purchasers of the other fragments.

If the plaintiff is right in the contention that the obligations and duties imposed upon the original canal company have devolved upon the defendant, then the defendant must be subject to the same penalties and liabilities. What the plaintiff complains of is that the defendant has closed these twelve miles of the canal to the public, and as to the plaintiff has obstructed free navigation and excluded it from the use of the same as a public highway. If that be so, then the plaintiff is entitled to recover from the defendant in an action at law, not only all damages accruing to it from the defendant's refusal to open the canal to the public, but also is entitled to recover a penalty of one hundred dollars for each refusal to comply with the plaintiff's demands. It would follow from this that the plaintiff has a perfect remedy at law, and that a court of equity has no jurisdiction. The controversy simply involves a dispute between the parties to this action as to the ownership of the easterly end of what was originally a canal one hundred and ten miles long. The defendant claims that it owns the land, the prism and every other physical object

connected with the same.   The plaintiff denies that claim, and
insists that it is still a public highway over which it has a
right to transport its goods.   If the defendant is a common
carrier, as the plaintiff claims, then it can be compelled to do
its duty by mandamus or by an action for damages, but I
doubt if any controlling authority can be found that justifies
the interference of a court of equity by writ of injunction.
On the contrary, I think the law is well settled the other way.
The rule that governs in such cases was stated by Judge
Andrews in *Moore* v. *Brooklyn City R. R. Co.* (108 N. Y.
98) as follows: " The threatened violation of a mere naked
legal right, unaccompanied by special circumstances, is not a
ground for injunction when, as in this case, legal remedies
are adequate to redress any resulting injury.   If the defend-
ant violates its charter, or fails to perform the conditions
under which it exercises its franchises, or if in the man-
agement of its trains or business it unlawfully occupies or
obstructs the public highway, the remedy in the one case
is by a proceeding in behalf of the People by the attorney-
general to annul or forfeit its franchise, and in the other
by indictment or proceedings under the statute."   And by
Judge Ruger in *Thomas* v. *Musical M. P. Union* (121 N. Y.
45): " It is, therefore, a cardinal rule of equity that it will
not entertain jurisdiction of cases where there is an adequate
remedy at law, or grant relief, unless for the purpose of
preventing serious and irreparable injury.   These principles
are elementary and lie at the foundation of all equitable
jurisdiction.   Equity, therefore, interferes in the transactions
of men by preventive measures only when irreparable injury
is threatened, and the law does not afford an adequate remedy
for the contemplated wrong."   The principle thus stated has
never been departed from in this court.   On the contrary, it
seems to me that the rule has been observed, if not extended,
in a very recent case.   (*People ex rel. Corscadden* v. *Howe*,
177 N. Y. 499.)   The authorities are clear and numerous to
the effect that a bill in equity will not lie in a case like this.
And in some of the cases the facts are almost identical with

the case at bar. (*B. M. C. Co.* v. *L. C. & N. Co.*, 50 Pa. St. 91; *Saylor* v. *Pa. Canal Co.*, 183 Pa. St. 167.) The owners of a ferry, a stage coach or a railroad are, doubtless, conducting a business that is affected with the public interests, but I am not aware of any authority for the proposition that if they refuse to perform their proper functions and exclude an individual or even the whole public from the accommodations with which the business is charged they can be disciplined in that regard by an injunction from a court of equity. The remedy in such cases is by mandamus or by action at law for damages, or to recover the statutory penalties for a refusal to grant the accommodations.

Moreover, I am unable to see how a manufacturing corporation can exercise the franchise of operating a public canal or railroad. A corporation has no right to exercise any franchises not conferred upon it by law, and I am not aware that there is any law that has conferred upon a manufacturing corporation the powers, duties or obligations of a common carrier. It cannot acquire by grant the power to engage in a business not embraced within the scope of its charter. The attorney-general may bring an action to dissolve any corporation that is engaged in the exercise of any franchise not conferred upon it by law. (Code, § 1798.) And it would seem to follow that such an action might be maintained against the defendant, in behalf of the People, providing it could be shown that it has actually usurped such powers and is assuming to exercise such a franchise. A court of equity will not compel a manufacturing corporation to do things which, if done, would subject it to dissolution and death in an action in behalf of the People. I cannot believe that the legislature intended, when authorizing the canal company to sell or discontinue the canal in fragments, to impose upon the various purchasers the duties and obligations of the original corporation. It is quite certain that the statute which authorizes the sale or discontinuance of the canal is silent with respect to the franchise, and it must have reverted to the state unless it is distributed among the various owners who at present are in possession of the prop-

erty.  The defendant, doubtless, had the power, within the scope of its charter, to buy the land and the other physical objects which constitute these twelve miles of waterway, but it had no power to acquire by grant or to exercise the powers and privileges originally granted to the canal company.  If it acquired any of the powers so conferred, it acquired them all, and these powers included the right to exercise the power of eminent domain and various other things utterly foreign to the functions of a manufacturing corporation.  It is of no consequence that the defendant in some instances has permitted others to use the waterway.  That is a voluntary act on its part and does not proceed from any legal obligation. The defendant may permit its neighbors to cross its land or use its real estate for their convenience, and it may charge what it deems a reasonable compensation for the privilege. But when it is contended that it is obliged to do it, that presents quite another and different question, and that is what the plaintiff claims and insists upon.  It seems to me that the fallacy involved in the argument in behalf of the plaintiff consists in assuming that the original franchise granted to the canal company has followed all the fragments of the original property which composed it, when by statute the owners of the property were authorized to discontinue it or abandon it, which is the same thing, and neither the original franchise nor any obligation or duty attached to it survived or devolved upon the purchasers. By the original statute a corporation was created for the express purpose of constructing and operating a canal.  It was a private enterprise, but certain privileges and franchises were conferred upon the corporation and delegated to it by the sovereign, and thus it was authorized to exercise some of the powers of government, such as the right to condemn land, to recover from any one obstructing or in any way injuring the waterway or anything connected with it four times the damages actually sustained, and other powers quite unusual in the case of private corporations.  If the duties and obligations of a common carrier have been cast upon the defendant the rights and privileges conferred must have accompanied them

and are now possessed by it, and, hence, it would follow that the defendant, as a mere manufacturing corporation, has acquired powers and privileges not possessed by any other manufacturing corporation in the state.

The statute prohibits any corporation from exercising any corporate powers except such as are expressly conferred by its charter or by law or are necessary to the exercise of the powers expressly enumerated and given. Where did the defendant, a mere manufacturing corporation, get the power to operate and maintain a canal or railroad for the transportation of passengers and goods? By what authority can it exercise the powers and privileges of a transportation company? The contention of the learned counsel for the plaintiff imposes upon him not only the burden of showing that the defendant possessed all these powers but that a court of equity will command and compel their exercise upon the demand of the plaintiff. If the duties of a common carrier have been imposed upon the defendant, as the plaintiff claims, the result has been accomplished in no other way than by a conveyance of the physical property to the defendant by an intermediate owner under statutory authority to "discontinue to use or maintain the canal." Under the exercise of that authority the canal has ceased to exist, as such, since it was sold in fragments, and if the defendant purchased a larger fragment than the other purchasers it took the fragment with only the same burdens and obligations as the others did. It had the power to become the owner of any land necessary for its own operations, and if that land happened to be covered with water, as was the case, it could float its own products on the water like any other private owner, but it was not bound in law to permit others to do so. The defendant could not become a transportation company by any private grant, nor did the governmental powers delegated to the canal company, which we call a franchise, pass to it through a deed like covenants which run with the land. The legislature, I think, conferred authority upon the owners of the canal to discontinue its use or

maintenance as a public highway, and it has been discontinued and abandoned under that authority.

The legislature declared in explicit terms that the managers and owners of the canal might discontinue and abandon it as a public highway when, in their judgment, it was no longer useful or necessary for the purpose of its original construction, namely, the transportation of coal. The use of the waterway for the accommodation of the plaintiff, or for any other purpose than a channel for carrying coal was not contemplated. The abandonment of the canal, as such, was made to depend entirely upon the judgment of the managers that it was " no longer necessary for said purpose ; " that is to say, for the purpose of carrying coal. They determined that it was no longer useful for that purpose, and, hence, it was abandoned and sold, and the plaintiff has no right to insist that a fragment of it shall be kept in life for its private use. If the plaintiff wanted it retained for its own manufacturing or transportation operations, it could have outbidden the defendant at the sale, and, if that happened, there can be little doubt that the plaintiff would have assumed the same position with respect to its use by the public that the defendant assumes now.

It is suggested that the defendant cannot set up the defense of *ultra vires,* and cases are cited to show that a corporation cannot avoid its contracts or defend its wrongful acts on the ground that it had no power to make the contract or to do the thing for which a party sues to enforce a liability. No one disputes that principle or questions the authority of the cases cited, but they have no application whatever to this case, for the plain reason that the defendant is not sued upon any *ultra vires* contract or act. What it is sued for is for *refusing* to make contracts, or to do things or to engage in a business which, as a manufacturing corporation, it is forbidden to do. The question is not when or how a corporation may defend on the ground of *ultra vires,* but whether a court of equity will compel a manufacturing corporation against its will and protest to do things and to engage in a business not within

its chartered powers or permitted by law. If any case or any authority can be found to sustain the proposition that a court of equity will make such a decree and thus compel the corporation to incur the risk of corporate death, then such a case or authority is pertinent, but it is entirely safe to assert that no case or authority of this kind can be found. It does not meet the point at all to cite cases to show that a corporation will not be permitted to repudiate its contracts or affirmative acts by the plea of *ultra vires.* What is sought to be accomplished in this case is to *compel* a manufacturing corporation to make *ultra vires* contracts and to enter into business relations and to exercise powers not conferred upon it by law, and the exercise of which is prohibited. Some principle or some authority to sustain that claim is what is very much needed in this case.

The exclusion of the plaintiff from the use of the twelve miles purchased by the defendant is not a special wrong peculiar to the plaintiff, but to the whole public of which the plaintiff is a part. The injury, if any, is in common with the whole public, and not special to itself. The principle is quite familiar that, under such circumstances, a private party cannot maintain an action for an injunction, either in his own behalf or in behalf of the public. If the defendant, as alleged, has obstructed or closed up a public highway, and wrongfully excluded the whole public from the use of the same, the remedy is by action in the name of the People by the attorney-general. (*Knickerbocker Ice Company* v. *Shultz,* 116 N. Y. 382 ; *Lansing* v. *Smith,* 8 Cowen, 146 ; *B. M. C. Co.* v. *L. C. & N. Co.,* 50 Pa. St. 91 ; *Saylor* v. *Pa. Canal Co.,* 183 Pa. St. 167 ; *Wakeman* v. *Wilbur,* 147 N. Y. 657.) There is no finding that takes the case out of this principle.

There is another view of this case which is founded upon the condition of the record. The decision is in the short form, and the judgment in favor of the defendant was unanimously affirmed. In such a case the decision of the trial court has the same effect as the general verdict of a jury, and all the facts must be deemed to have been found in favor of

the successful party.  In the case at bar the plaintiff cannot succeed unless certain facts are found in its favor.

1. It must be found that the canal was never abandoned, but is still a public highway, and that is a question of fact, or at least a mixed question of law and fact.

2. It must be found that the defendant purchased the twelve miles and assumed control of it, not as a private waterway but as a public highway.

3. It must be found that the defendant prevented the plaintiff from using a public highway to transport its goods and that plaintiff sustained specific damage different from the damage to the whole public.

These facts and all other facts in the case. instead of being found in favor of the plaintiff, have been found in favor of the defendant, under the doctrine of our own decisions, and if any question survives to this court after the unanimous decision it ought to be pointed out, so that we may know just what the rule is in such cases and what are the exceptions, if any.  The plaintiff cannot succeed in this appeal, unless we hold, not only that these propositions are still open in this court, but are to be assumed in favor of the plaintiff and against the judgment.  If that is so, then I can only say that I am utterly unable to understand the meaning of the numerous decisions of this court on the question.  One of the most recent is that of *Hutton* v. *Smith* (175 N. Y. 375), where the following proposition was decided: " Where a judgment entered upon a decision of the trial court in the short form is unanimously affirmed by the Appellate Division, the Court of Appeals is concluded thereby and, whatever the views of the court may be, it must assume that facts sufficient to sustain the decision were necessarily found by the trial court."  In the case of *City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.* (168 N. Y. 610) the question was whether the locus in quo was a highway, or private property.  That is the question in this case, but in that case it was held that no question survived the unanimous decision, although it appeared that the railroad had written title of record to the land.

13

There are many other cases to the same effect, all so recent that their scope must be well understood.  If I am wrong in supposing that the case at bar must share the same fate, it ought not to be difficult to point out wherein this case differs from others, where the decison is in the short form and unanimously affirmed.

I think there was no error in the disposition of this case by the courts below, and that the judgment should be affirmed, with costs.

HAIGHT, VANN, CULLEN and WERNER, JJ., concur with BARTLETT, J. ; O'BRIEN, J., reads dissenting opinion ; PARKER, Ch. J., absent.

Judgment reversed, etc.